No. 86-259

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

SANDRA MILLS STEWART STOKOE,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Nye & Meyer; Jerrold L. Nye, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Clay Smith, Asst. Atty. General; Ed Dobson, Legal
        Intern, Helena , Montana
        Marc Racicot, County Prosecutor Services Bureau Chief,
        Helena, Montana
        Harold L. Hanser, County Attorney, Billings, Montana

_____

Submitted on Briefs: Aug. 14, 1986

Decided: December 30, 1986

Filed:  DEC 30 1986

_____

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Sandra Stokoe appeals a Yellowstone County District Court jury verdict convicting her of the criminal sale of dangerous drugs to Lee Jonas.

Two issues are raised on appeal:

(1) Whether there is substantial evidence to support the conviction for sale of dangerous drugs?

(2) Whether a purchaser is an accomplice to a seller of dangerous drugs thereby requiring independent corroboration of the purchaser's testimony to sustain the seller's conviction?

We affirm.

On November 2, 1984, undercover agent Geary of the Montana Criminal Investigation Bureau was contacted in Billings, Montana, by Lee Jonas who offered to sell him an ounce of cocaine. Two other agents and two Yellowstone County Sheriff deputies in separate vehicles began surveillance of Jonas' residence at 3:55 p.m. on November 5, 1984, or approximately sixteen minutes before agent Geary arrived wearing an electronic transmitting device pursuant to court order. During the operation, the surveillants heard several references to "Sandy" [Stokoe] and "Sandy's place." Jonas' girlfriend met agent Geary at the house and said that Jonas would be back in a few minutes. Jonas arrived at 4:23 p.m. and displayed a sample of the cocaine for Geary. Jonas said the sample had come "from Sandy's" and that he had to go back to Sandy's house to get the ounce of cocaine. At 4:32 p.m. the surveillants watched Jonas and his girlfriend exit their residence and drive to Stokoe's residence. Agent Geary followed in his car and parked in front of Stokoe's house,

2

remaining in the car. Jonas and his girlfriend testified that Stokoe let both of them into her house. They observed that Stokoe's five year old daughter was the only other person present. Jonas added that Stokoe, his aunt, had expected him. Jonas went to a back bedroom of the house, weighed out the cocaine on a scale, and put it into a baggie. Approximately four minutes after arriving, (4:59 p.m.) Jonas' girlfriend came out of the house and entered agent Geary's vehicle demanding that he pay her $2,400, drive to nearby Trails End Park to avoid curious neighbors and wait for Jonas to arrive with the cocaine. Geary paid the girlfriend $2,400 at this time. Before the girlfriend left the house, the surveillant party could see Jonas, the girlfriend, and an unknown female adult having a discussion. A surveillant agent followed Geary and Jonas' girlfriend to the park where they were met by Jonas seven minutes later. Geary entered Jonas' vehicle upon Jonas' hand signal to do so. Jonas handed over the ounce of cocaine and Geary paid him $50 more. Jonas told Geary that he [Geary] was supposed to get $100 back from the girlfriend. Geary walked back to his car where the girlfriend gave Geary $100. At this point the girlfriend walked back to Jonas' vehicle. Jonas and the girlfriend then drove back to the Stokoe house under surveillance and were let into the house by Stokoe. The surveillance was then terminated. As for the payment arrangement, Jonas testified as follows:

> Q: How did you reach the fact situation that you gave her [Stokoe] $2,250 and you kept $100?
>
> A: I told Patrick Geary that I could get it for him for $2,350, because Sandy had already told me I could get it from her for $2,250.

3

Q: So you had agreed to pay her $2,250 for it [the cocaine]?

A: Yes.

Q: And you did that after you got the money from Officer Geary.

A: That I agreed to pay her for it?

Q: No, no, you actually made the payment after you got back there. [To Stokoe's house.]

A: Yes, I did.

As to the source of the cocaine, Jonas further testified:

Q: Did you have more than one other source?

A: No, I did not.

Q: What prompted you to choose to buy cocaine or allegedly buy cocaine from Sandy Stokoe versus from your other source?

A: Availability.

Q: What do you mean availability?

A: She [Stokoe] had it and my other source didn't.

Jonas pleaded guilty to the sale of cocaine to agent Geary and a marijuana sale to Geary on September 28, 1984. In exchange for a statement, the State recommended a three year probationary sentence which was approved by the District Court. The Montana State Crime Lab positively identified the substance as cocaine.

The test for the sufficiency of the evidence to support the judgment of conviction is whether there is substantial evidence to support the conviction, viewed in a light most favorable to the State. State v. Lamb (1982), 198 Mont. 323, 646 P.2d 516. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." State v. Kutnyak (Mont. 1984), 685 P.2d 901, 910-911, 41 St.Rep. 1277, 1289.

Section 45-9-101(1), MCA, states as follows:

> A person commits the offense of criminal sale of dangerous drugs if he sells, barters, exchanges, gives away, or offers to sell, barter, exchange, or give away or manufactures, prepares, cultivates, compounds, or processes any dangerous drug as defined in 50-32-101.

The compiler's comment to § 45-9-101, MCA, reveals the broad reach of the statute. "Although this section is entitled 'Criminal Sale of Dangerous Drugs', it includes all types of transfers and activities preparatory to actual sale . . . " In State v. Davis (Mont. 1980), 620 P.2d 1209, 1215, 37 St.Rep. 1958, 1964, we said:

> [T]he Montana legislature did not intend that a sale should be complete merely upon the exchange of money. <u>Delivery appears to be an integral part of the sale of drugs</u>, particularly when we consider that the statutes are aimed primarily at stopping the transfer and distribution of dangerous drugs. (Emphasis added.)

We find that, when viewed in a light most favorable to the State, there was substantial evidence to support the conviction. Stokoe knowingly and intentionally transferred possession of an ounce of cocaine to Jonas for $2,250 and therefore her actions met the test set forth in <u>Davis</u>. Stokoe's involvement in the crime of selling cocaine was abundantly clear. She gave a sample of the cocaine to Jonas for inspection purposes and possessed a scale to measure out particular quantities of cocaine for subsequent distribution. As the <u>Davis</u> case indicates, § 45-9-101, MCA, was enacted to stop the transfer and distribution of dangerous drugs such as cocaine. We see no reason to overturn the jury's decision.

5

On the issue of whether a purchaser is an accomplice to a seller of dangerous drugs thereby requiring independent corroboration of the purchaser's testimony to sustain the seller's conviction, we refer to § 45-2-302, MCA:

> A person is legally accountable for the conduct of another when:
>
> (1) having a mental state described by the statute defining the offense, he causes another to perform the conduct, regardless of the legal capacity or mental state of the other person;
>
> (2) the statute defining the offense makes him so accountable; or
>
> (3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense. . .

It is generally held that a purchaser of illegal drugs is not an accomplice to the crime of selling drugs. State v. Nasholm (Or.App. 1979), 467 P.2d 647; State v. Warnock (Wash. App. 1972), 501 P.2d 625; Lujan v. State (Nev. 1969), 449 P.2d 244; State v. Anderson (N.D. 1969), 172 N.W.2d 597.

In this case, Jonas was not only a purchaser of drugs, but also a seller. A review of similar cases from other jurisdictions and other authority leads us to conclude that Jonas' status does not constitute that of an accomplice.

In Wheeler v. State (Wyo. 1984), 691 P.2d 599, the defendant was convicted of delivery of cocaine. The buyer of the cocaine was arrested and charged with delivery and possession of cocaine. The charges were dropped in exchange for the buyer's testimony against the defendant. The defendant argued that the buyer of the cocaine, by virtue of being charged with violating the same statute as the defendant, i.e. delivery of a controlled substance, was an

6

accomplice of the original sale made to him. The Wyoming Supreme Court disagreed:

> The mere fact that a buyer of narcotics turns around and sells them to someone else, thereby bringing himself within the delivery statutes, does not make him an accomplice of the original sale made to him. There is a definite distinction between a seller and a buyer. Their separate acts may result in a single transaction, but the buyer is not aiding the "selling act" of the seller and the seller is not aiding the "buying act" of the buyer. The buyer and seller act from different poles. They are not in association or confederacy. An accomplice is one who participates in the same criminal conduct as the defendant, not one whose conduct is the antithesis of the defendant, albeit the conduct of both is involved in a single transaction.

Wheeler, 691 P.2d at 602. The Wheeler court cites Wharton's Criminal Evidence (13th ed. 1973), for its position that a purchaser of narcotics is not an accomplice of the defendant charged with selling the narcotics. Wheeler, 691 P.2d at 602.

In State v. Fox (S.D. 1981), 313 N.W.2d 38, the defendant was convicted of possession and distribution of marijuana and distribution of cocaine. A paid informant approached a third person who in turn contacted the defendant for the drugs subsequently sold to the informant by the third person. As in the case before us, the transaction between the defendant and the third person did not occur in the immediate presence of the informant. A unanimous South Dakota Supreme Court held that the third person was a purchaser and a seller of drugs but could not be considered an accomplice. The Court concluded that "the crimes of [the third person] and appellant involved separate and distinct acts." Fox, 313 N.W.2d at 41. Hence, no corroboration of the

third person's testimony was required to sustain the conviction.

As the Wheeler court noted, there is a definite distinction between a seller and a buyer, and even though their separate acts may result in a single transaction, the buyer does not aid the "selling act" of the seller, and the seller does not aid the "buying act" of the buyer. Jonas did not aid Stokoe in the selling of cocaine; he was only interested in obtaining possession of the cocaine through its purchase. Hence Jonas and Stokoe did not share the same criminal purpose as required under the accountability statute. Since Jonas cannot be viewed as an accomplice, his testimony need not be corroborated.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

8