No. 89-155

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

　　　　　Plaintiff and Respondent,

　-vs-

SAMUEL MARK DOWNING,

　　　　　Defendant and Appellant.

'89 DEC 8 PM 3 04

FILED

ED SMITH, CLERK
MONTANA SUPREME COURT

APPEAL FROM: District Court of the Fourth Judicial District,
　　　　　　　In and for the County of Ravalli,
　　　　　　　The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

　　　For Appellant:

　　　　　Martin John Elison, Missoula, Montana

　　　For Respondent:

　　　　　Hon. Marc Racicot, Attorney General, Helena, Montana
　　　　　James Yellowtail, Asst. Atty. General, Helena
　　　　　John W. Robinson, Ravalli County Attorney, Hamilton,
　　　　　Montana; Margaret Tonan, Deputy County Atty., Hamilton

Submitted on Briefs: Oct. 20, 1989

Decided: December 8, 1989

Filed:

_____
　　　　　　Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Samuel Downing appeals his conviction of accountability in the sale of dangerous drugs, methamphetamine, following a jury trial in the Fourth Judicial District Court, Ravalli County. We affirm.

The appellant raises the following issues:

1. Did the District Court err by failing to grant the defendant's motion for a directed verdict following the State's case-in-chief?

2. Does the record contain sufficient evidence to support the jury verdict?

The facts are not in dispute. The State's case-in-chief relied on the testimony of Agents Mark Brady and Robert Fairchild of the Montana Criminal Investigation Bureau. They testified that together with an unidentified informant, they formed an undercover team which attempted to purchase illicit drugs in Hamilton, Montana. The informant identified potential sellers and Agent Brady made contact. Agent Fairchild acted as backup officer monitoring and taping the conversations through a "wire" worn by Brady.

The informant introduced Brady to the appellant as a possible source of drugs. When Brady asked the appellant if he could buy some "crank" or methamphetamine, Downing indicated that he had none, but arranged a meeting between Brady and Earl Ohl. Ohl also had no crank, but expected to receive a shipment that evening.

The following day while in route to Ohl's house to purchase the drugs, Agent Brady and the informant came across the appellant. Downing accompanied the party to Ohl's home where Ohl introduced Brady to Mark Huskins. Huskins sold Brady one gram of methamphetamine for $110. Brady, Downing, Ohl, and Huskins were all present during the sale. On their way out, Brady passed $10 to Downing.

The defense consisted of testimony by appellant Downing and his girlfriend, Julie Phelps. They corroborated most of the facts as given by Agents Brady and Fairchild, but emphasized the inadequacy of the connection between Downing's assistance and Huskins' drug sale. Downing admitted that he helped set up a deal between Brady and Ohl, but testified that he was not aware that Huskins would actually make the sale. He testified that he did not introduce Brady to Huskins, did not encourage the sale, and took no part in the transaction.

The issues presented are whether the record contains sufficient evidence to sustain the trial court's refusal to grant the defendant's motion for a directed verdict and to sustain the jury's verdict. The decision to grant or refuse a directed verdict is within the trial court's discretion. State v. Miller (Mont. 1988), 757 P.2d 1275, 1282, 45 St.Rep. 790, 798. Whether a defendant is an accomplice, however, is a question for the jury. State v. Gonyea (1987), 225 Mont. 56, 59, 730 P.2d 424, 426. The trial court's standard in considering a directed verdict, and this Court's standard in reviewing the trial court decision, gives full consideration to the jury's role.

> The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Miller, 757 P.2d at 1283, 45 St.Rep. at 798. (Citation and emphasis deleted.)

This is the same standard for this Court in determining whether the evidence was sufficient to warrant the jury's verdict. Miller, 757 P.2d at 1286, 45 St.Rep. at 803. We must determine whether a reasonable jury could have found the essential elements of account-

ability following the State's case-in-chief and following the defendant's case-in-chief.

The relevant accountability section incorporates the essential elements.

> A person is legally accountable for the conduct of another when:
>
> . . .
>
> [1] either before or during [2] the commission of an offense [3] with the purpose to promote or facilitate such commission, [4] he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense.

Section 45-2-302(3), MCA. (Enumeration added.)

The first element is not in dispute. The appellant does not contend that evidence fails to show that Downing's actions occurred prior to or during the underlying offense.

The second element requires that accountability be predicated upon a separate, underlying offense. See Matter of B.D.C. (1984), 211 Mont. 216, 221, 687 P.2d 655, 657 (holding that accountability is not a separate offense). According to the information filed against Downing, the underlying offense was Huskins' sale of methamphetamine. The parties do not dispute that the underlying crime actually occurred, but they apparently have some contentions as to its parameters for accountability purposes. Downing's accountability is predicated only upon Huskins' sale of drugs. It does not attach to any illegal acts by Earl Ohl. Nor does it attach to Agent Brady's purchase of drugs. See State v. Stokoe (1986), 224 Mont. 461, 464-65, 730 P.2d 415, 417 (holding that the sale and purchase of drugs are distinct crimes). The question,

4

then, is limited to whether Downing assisted Mark Huskins in selling drugs.

The third element goes to the defendant's mental state. The statute requires only that the defendant purposely abetted the crime. This Court, however, also requires the accomplice to act "knowingly, voluntarily and with common intent with the principal offender. . . ." Gonyea, 225 Mont. at 58, 730 P.2d at 426; State v. Nordahl (1984), 208 Mont. 513, 517, 679 P.2d 241, 243. "Purposely" is defined as having the conscious objective to engage in the criminal act or cause the criminal act. Section 45-2-101(58), MCA. "Knowingly" is defined as aware that it is highly probable that the criminal act will result. Section 45-2-101(33), MCA.

Regardless of whether the "purposely" or "knowingly" standard is applied, we, like the jury, are faced with the same decisive question: what criminal act did Downing intend to abet? Downing admittedly intended to abet Agent Brady in purchasing crank. In so doing, the appellant necessarily intended to aid someone in selling the drugs. The appellant argues that he intended only to facilitate a sale by Earl Ohl. He asserts that he did not envision a sale by Mark Huskins and therefore is not accountable for that sale. The District Court and the jury found this interpretation of the evidence to be much too narrow and we agree.

During the State's case-in-chief, Agent Brady testified as follows:

> Q. What happened once you . . . made contact with the defendant? What then happened?
>
> A. There were conversations between myself, the informant, and Mr. Downing about the availability of dangerous drugs.
>
> Q. What did you ask specifically? Do you recall?

A.  At one point in time, Mr. Downing asked what type of drug we were looking for and I mentioned crank.

. . .

Q.  Once that made known [sic] to the defendant, what then happened?

A.  Mr. Downing told the informant and myself that he did not currently have any but that an individual by the name of Earl may have some, and he would have to check with Earl.

Agent Brady also testified about a conversation between himself and Downing following the drug sale at Earl Ohl's residence:

Q.  Was there any conversation after the $10.00 was transferred to the defendant?

A.  . . . Asked if he knew of anything else in the area. At that time he didn't know but he told us to -- if that -- if we needed anything at a later date and time to go ahead and contact him and he would see what was available.

Viewing this evidence in the light most favorable to the prosecution, a reasonable jury could have found that the appellant intended to aid in a drug sale by whomever had the drugs available. Downing's intent was not necessarily limited to a sale by Earl Ohl. Brady initiated an open invitation to purchase drugs from whomever Downing could contact. On the testimony presented, the fact that Ohl happened to be the most accessible dealer, would not preclude a jury from finding that the appellant intended to abet a drug sale by some other individual.

An open-ended intent does not conflict with the requirement that the accomplice have a common intent with the principal offender. The two parties may move independently toward accom-

6

plishing the same goal. The accomplice need not know all the details of the underlying crime. The evidence is undisputed that both Downing and Huskins intended to accomplish a sale of drugs to Agent Brady. We hold that the District Court did not abuse its discretion in refusing to grant the appellant a directed verdict.

The evidence that the appellant intended to aid an open-ended drug sale became even stronger with Downing's own testimony. Downing indicated that he would begin his search for drugs with Earl Ohl but also indicated that he did not intend to limit his search to Earl Ohl. Downing testified,

> [T]he informant, asked me if I knew where to get any speed, and I said I didn't have any but Earl would probably be as good a place to start as any.

We hold the record contained sufficient evidence to support the jury's determination that the appellant intended to aid in the sale of dangerous drugs which was accomplished by Mark Huskins.

The fourth element goes to the unlawful acts committed by the defendant. We have repeatedly stated the rules on what acts give rise to accountability and will not unnecessarily repeat them here. We do note that both the appellant and the State offered evidence and now debate whether the sale would have taken place without Downing's assistance. The "but for" test is not decisive in accountability. The accountability statute allows for attempts to aid in the underlying crime. The Montana statute permits conviction of a defendant who tried but failed to abet a crime so long as the underlying crime succeeded. Thus, the question under this element is not whether the defendant's acts were a prerequisite to the underlying crime, but whether the defendant acted to abet the crime.

7

The record is sufficient to support both the refusal of a directed verdict and the jury verdict on this element. By directing Brady to Ohl, the appellant set in motion a chain of events which eventually led to the Huskins sale.

Appellant Downing shares responsibility for this drug sale. He set up the transaction and participated at every stage. He would have us overturn his conviction on the grounds that he failed to foresee every detail. The District Court and the jury correctly refused to exonerate Downing simply because Huskins, rather than Ohl, handed the drugs to Agent Brady.

Affirmed.

_____
Chief Justice

We concur:

_____

_____
Justices

Justice William E. Hunt, Sr.:

I concur in the result but not in all that is said.

_____
Justice

8