No. 91-085

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MICHAEL JAMES KOONTZ,

Defendant and Appellant.

FILED

JUN 18 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Randi M. Hood, Public Defender's Office, Helena,
Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
John Paulson, Assistant Attorney General, Helena,
Montana
Mike McGrath, Lewis and Clark County Attorney,
Helena, Montana

Submitted on Briefs: May 23, 1991

Decided: June 18, 1991

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Michael James Koontz appeals from the December 11, 1990, verdict of a jury sitting in the District Court of the First Judicial District, Lewis and Clark County, Montana, finding him guilty of robbery by accountability, a felony, in violation of §§ 45-2-302 and 45-5-401(1)(b), MCA. We affirm.

The issue is whether sufficient evidence corroborates the testimony of defendant's alleged accomplice in the robbery of a convenience store for the jury to find defendant guilty of robbery by accountability.

I

On February 24, 1990 at approximately 6:00 p.m., Broadwater Market in Helena, Montana, was robbed by Eddi Jo Howard. Howard entered the market, pointed a gun at the clerk, and demanded money. According to the testimony of the store clerk, she was dressed in a white coat and had a pair of nylon pantyhose on her head, but not pulled down over her face. After the clerk handed over all the money in the cash drawer, Howard told him to check underneath the food stamps for more cash. No money was under the food stamps, and Howard then instructed the clerk to give her all the money underneath the till. The clerk took the checks from under the till and spread them out to show Howard that no bills were among them. When he looked up, Howard was already out the door.

The clerk caught a glimpse of a blue car with a white top, which he thought was perhaps a Chevrolet Monte Carlo, leaving the market's parking lot at a high rate of speed, but could not see who

was driving or how many people were in the car.

At approximately 8:00 the same evening, Helena Police Department officers stopped a car matching the description given by the convenience store clerk. Defendant was a passenger in the car driven by Howard, who consented to a search of the car by police officers. When officers found nothing pertaining to the robbery in the car, including the trunk of the car, Howard and defendant were released.

Howard continued working at her regular job in Helena for the next two months before leaving the city in April 1990 to visit her mother in Tacoma, Washington.

In July 1990, defendant was detained by officers of the Federal Bureau of Investigation in Denver, Colorado. He gave F.B.I. agents a statement implicating Howard in the Broadwater Market robbery. Because of the information defendant had provided to the F.B.I., law enforcement officers arrested Howard on August 10, 1990, in Tacoma.

Howard pled guilty to robbery and was sentenced to fifteen years with ten years suspended plus a sentence enhancement of two years for use of a weapon. A condition of Howard's sentence was that she testify against defendant.

Since defendant's statement to the F.B.I. and testimony of the principal witnesses are crucial evidence, we briefly summarize each witness' version of events surrounding the robbery.

Defendant's Statement to F.B.I. Officers

The F.B.I. report, admitted into evidence at trial, contained defendant's freely given statement that he was driving Howard's

car when the robbery was committed. According to defendant, Howard had asked him to go for a ride in her car. On their way out of town, Howard asked him to stop at Broadwater Market because she wanted to buy some cigarettes. Howard went into the store and came out in less than a minute, saying that her father, with whom she was on unfriendly terms, was in the store and that she wanted to go home, change her clothes, and go out for the evening.

Defendant drove Howard to her home, where she changed her clothes while defendant waited in the car. They then went to the Gold Bar and played gambling machines. After leaving the Gold Bar, on their way to another bar, Howard and defendant were stopped by police who searched Howard's car. Finding nothing in the car, police released the couple. As the couple continued on their way to Ginny's Casino, defendant began to question Howard about whether she had robbed Broadwater Market. Howard at first denied having committed the robbery. But after retrieving a revolver from the trunk of her car, Howard admitted that she had robbed Broadway Market.

Defendant and Howard then went into Ginny's Casino where Howard gave defendant $50 for gambling while she gambled away four or five times that amount. After defendant left Ginny's Casino without Howard, he went to the residence of his girlfriend, Hannah Gibson, and told her that Howard had robbed Broadwater Market. He left the next day with Gibson to visit her children in Denver.

Howard's Testimony

Howard's account of the robbery differed markedly from defendant's statement. Howard said that she was depressed and

4

contemplating suicide because of $800 worth of bad checks she had written to cover gambling debts. On the afternoon of the robbery, Howard and defendant had been drinking for three or four hours at a local bar when he suggested, to solve her financial difficulties, robbing a convenience store on the west side of town because no stores had been robbed in that area of Helena. Defendant instructed Howard to disguise herself by pulling a nylon down over her face, which she forgot to do while she was committing the robbery. In addition, defendant suggested that Howard order the convenience store clerk to lie down on the floor.

Defendant drove Howard to Broadwater Market, and she went inside to buy a pack of cigarettes. After leaving the market, Howard cut the legs from a pair of pantyhose that she had in the car. She had hidden a .44 caliber handgun in the car under the seat. Defendant again drove Howard to Broadwater Market and waited outside while she robbed the store.

After leaving the parking lot of Broadwater Market, Howard gave defendant $100 of the $405 she recovered in the robbery. Defendant directed Howard to dispose of her coat and change her clothes in order that she not be recognized. Howard threw out her pantyhose, and defendant drove Howard to her residence where she left the gun and changed her clothes. After throwing Howard's coat into a garbage container outside a restaurant, Howard and defendant went to the Gold Bar. In the Gold Bar, Howard gave defendant some more of the stolen money for gambling and in less than half an hour Howard gambled away the remainder of the money she had stolen.

After Howard and defendant left the Gold Bar, around 8:00

5

p.m., they were stopped by police. By this time, Howard had disposed of the pantyhose, the gun, her clothes, and the money. After being released by police, she and defendant drove to Ginny's Casino. Howard did not have further contact with defendant after he left the casino.

Hannah Gibson's Testimony

Hannah Gibson, defendant's girlfriend, appeared as a witness for the State and testified that she had seen both Howard and defendant, who were talking about being stopped by police, in Ginny's Casino on the night of the robbery.

About a week later defendant described to Gibson his involvement in the robbery. Defendant told Gibson that he and Howard were in a bar on the afternoon of February 24, 1990, and that Howard was planning to commit a robbery with a gun she had. Defendant declined Howard's request to help her with the robbery and saw Howard leave by the back door of the bar. When Howard came back to the bar with the money, defendant threatened to call police unless Howard gave him some of the money. Gibson did not know whether or not Howard had given defendant any of the money.

After the State rested, defendant moved to dismiss the charge of robbery by accountability against defendant on the ground that the State had not presented a prima facie case. Defendant argued that the State, as required by statute, had not introduced evidence corroborating Howard's testimony and showing that defendant had aided Howard before or during commission of the robbery. The court denied the motion.

The defense had earlier stipulated that defendant's statement

6

to F.B.I. officers would be admitted into evidence if the defendant did not testify. When defendant decided not to take the stand, the District Court allowed the State to reopen its case and enter the F.B.I. report into evidence. After deliberating for approximately three hours, the jury returned a guilty verdict.

The District Court sentenced defendant to thirty years in prison for robbery by accountability.

## II

Defendant contends that corroboration of Howard's testimony, as required by § 46-16-213, MCA, was insufficient to support the jury's verdict that he was guilty of robbery by accountability.

In deciding whether a person is legally accountable for an offense committed by another, a jury cannot rely exclusively on the testimony of an alleged accomplice because without corroborative evidence an innocent person may be convicted by the "'testimony of one with a strong motive for seeing that such conviction occurred.'" State v. Conrad (1990), 241 Mont. 1, 5, 785 P.2d 185, 187 (citing State v. Warren (1981), 192 Mont. 436, 439, 628 P.2d 292, 294).

By statute, the testimony of an alleged accomplice must be corroborated by independent evidence:

> A conviction cannot be had on the testimony of one responsible or legally accountable for the same offense, . . . unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Section 46-16-213, MCA. To summarize, the statute sets out three

7

requirements for corroborative evidence, which must: (1) be independent; (2) tend to connect the defendant with the commission of the offense; and (3) show more than the commission of an offense or the circumstances under which the offense was committed.

Other criteria for evaluating evidence corroborating an alleged accomplice's testimony have been established by case law. Corroborative evidence must raise more than a suspicion that defendant was involved in, or had an opportunity to commit, the crime. State v. Warren (1981), 192 Mont. 436, 441, 628 P.2d 292, 295. Corroborative evidence, in and of itself, need not be sufficient to make out a prima facie case against defendant and need not extend to every fact to which the alleged accomplice testifies. State v. Kaczmarek (1990), 243 Mont. 456, 459-60, 795 P.2d 439, 441-42. Corroborative evidence may be circumstantial and may come from the defendant or his witnesses. Kaczmarek, 243 Mont. at 460, 795 P.2d at 441.

Since the jury must decide the factual question of whether corroborative evidence of an alleged accomplice's testimony is sufficient for a conviction, we apply the sufficiency of the evidence test. State v. Downing (1989), 240 Mont. 215, 217, 783 P.2d 412, 414. This Court, after viewing the evidence in the light most favorable to the prosecution, must decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Downing, 240 Mont. at 217, 783 P.2d at 414.

Commission of a crime by accountability consists of four elements. Defendant is legally accountable for the conduct of

8

another when (1) either before or during (2) the commission of an offense (3) with the purpose to promote or facilitate such commission (4) defendant solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the crime. Section 45-2-302(3), MCA; Downing, 240 Mont. at 217, 783 P.2d at 414.

We now turn to the facts of this case to determine whether sufficient evidence corroborated Howard's testimony. First, Howard testified that while she and defendant were drinking in a bar two or three hours before the robbery, defendant advanced the idea of robbing a convenience store on the west side of Helena and helped plan the robbery. Defendant's admission to Hannah Gibson that he was in a bar with Howard prior to the robbery and that Howard had a gun and planned to commit a robbery tends to corroborate Howard's testimony.

Second, defendant admitted that he was driving the car at the time of the robbery. As we noted in State v. Case (1980), 190 Mont. 450, 454-55, 621 P.2d 1066, 1069, "the ensuing flight is considered part and parcel of a robbery until such time as the criminal purpose, including carrying away of the spoils of the crime, is completed." Defendant's statements to the F.B.I. are independent corroboration that he drove the get-away car which constituted part of the crime.

Although defendant claimed in his statement that he had no knowledge before or during the robbery of the crime being committed, defendant's version of events makes his claim questionable. Defendant stated in the F.B.I. report that after

9

Howard requested him to stop at Broadwater Market for cigarettes, Howard entered the store and "came out of the market in less than a minute." According to defendant, approximately two hours after leaving Broadwater Market and after the police had searched Howard's car, he first learned of the robbery when Howard "retrieved a gun from the trunk of the vehicle."

The jury had cause to doubt defendant's assertion that he had no knowledge that Howard was committing a robbery while he waited outside Broadwater Market. Defendant did not explain how Howard, without defendant's knowledge, could have exited the car with a gun which Howard said was hidden under the front seat. Nor does he reveal how Howard could have forced the store clerk to turn over the money, concealed the money, as well as the pantyhose, and deposited the gun in the trunk of the car without defendant's noticing, all in "less than a minute." Finally, defendant does not explain why police failed to find the gun in the car trunk, even though, as a police officer testified, the officers searched the trunk of the car carefully.

In addition to acknowledging that he had driven the get-away vehicle and that he knew at some point of the robbery, defendant admitted to the F.B.I. that he had taken Howard to her residence to change clothes. While he waited in the car, Howard "was in the house less than three minutes." Defendant also admitted that he had taken money from Howard after the robbery. These statements corroborate Howard's testimony about the events which occurred after the robbery.

Lastly, police discovered defendant and Howard in a car

10

matching the description of the vehicle seen at the scene of the robbery less than two hours after the robbery. Independent evidence "tends to connect the defendant with the commission of the offense," and shows more than the mere "commission of the offense or the circumstances thereof." We hold that the evidence was sufficient for the jury to conclude that defendant was guilty of robbery by accountability.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

11

June 18, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the foolowing orders were sent by United States mail, prepaid, to the following named:

Randi M. Hood
Attorney at Law
228 Broadway, Courthouse
Helena, MT 59601

Hon. Marc Racicot, Attorney General
                        ,Assistant
Justice Building
Helena, MT  59620   *Hand Delivered*

Mike McGrath
County Attorney
County Courthouse
Helena, MT  59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy