No. 92-170

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DAVID LEE LYONS,

Defendant and Appellant.

FILED

AUG 18 1992

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Nineteenth Judicial District,
               In and for the County of Lincoln,
               The Honorable Robert S. Keller, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        David W. Harman, Attorney at Law, Libby, Montana

        For Respondent:

        Hon.  Marc  Racicot,  Attorney  General,  Jennifer
        Anders, Assistant Attorney General, Helena, Montana
        Scott B. Spencer, County Attorney, Libby, Montana


                                Submitted on Briefs:  July 9, 1992

                                      Decided:  August 18, 1992

Filed:


                                        Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

A jury in the District Court for the Nineteenth Judicial District, Lincoln County, convicted David Lee Lyons of three counts of criminal sale of dangerous drugs. We reverse on all three counts, with directions that Count One be dismissed.

The dispositive issues are:

1. Did the court err in refusing to dismiss Count One for lack of sufficient evidence?

2. Did the court err in permitting law officer opinion testimony regarding the credibility of the informant?

To aid the court and counsel on remand, we also briefly address the following issues:

3. Was other crimes evidence admitted in violation of Just?

4. Did the court err in refusing to give defendant's entrapment instruction concerning Count Three, the sale of four pills?

Between September 1990 and May 1991, an undercover drug operation was conducted in Lincoln County, Montana, in which Hal Turner acted as an undercover agent for the Lincoln County Sheriff's Department. During his employment, Turner became acquainted with defendant Lyons.

On December 12, 1990, Turner went to Lyons's apartment to talk to a third person about arranging a drug deal. A fourth individual present at Lyons's apartment, Denyce Larson, provided some marijuana for everyone to smoke and said she knew where to buy more for

2

$25 per quarter ounce. Lyons and Turner both told Larson that they wanted to buy some and each arranged to pay for a quarter ounce to be delivered to Lyons's apartment later that evening.

Turner later returned to Lyons's apartment to pick up his marijuana. The marijuana for both buyers had been delivered in one bag. After some joking around, Lyons's girlfriend divided the marijuana into two bags, which Lyons readjusted to his satisfaction. Then Turner was allowed to choose which bag to take as his. This transaction is the basis of Count One charged against Lyons.

Counts Two and Three relate to sales of prescription sleeping pills by Lyons to Turner on December 18 and 19, 1990. Count Two alleged that Lyons gave Turner one pill and Count Three alleged that he sold Turner four more pills. Turner testified that these transactions occurred at Lyons's residence.

Lyons testified on his own behalf. He essentially admitted that the transaction charged as Count One occurred. However, he denied selling or giving Turner any prescription sleeping pills and maintained that Turner must have stolen the pills from him.

At the close of the defense's case, the State asked to be allowed to offer character evidence in rebuttal to rehabilitate witness Turner because, it argued, Turner's credibility had been directly attacked by the defense. The court granted the motion. Officer Klint, a Lincoln County detective, testified about the importance of credibility in an undercover agent. He further

testified that planting evidence is illegal, that he had checked into Turner's background before Turner began to work as an undercover agent, and that, in his opinion, Turner was "very truthful" as far as undercover work.

Lyons was convicted of three counts of selling dangerous drugs under § 45-9-101, MCA. A fourth count charged against him was dismissed during trial.

I

Did the court err in refusing to dismiss Count One for lack of sufficient evidence?

Lyons was convicted under Count One of criminal sale of dangerous drugs in violation of §§ 45-9-101 and 45-2-301, MCA. Section 45-9-101, MCA, defines the offense of sale of dangerous drugs as, _inter alia_, selling, bartering, exchanging, or giving away dangerous drugs as defined in § 50-32-101, MCA, or offering to do so. Section 45-2-301, MCA, provides:

> **Accountability for conduct of another.** A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself or that of another and he is legally accountable for such conduct as provided in 45-2-302, or both.

The companion statute, § 45-2-302, MCA, provides in relevant part:

> **When accountability exists.** A person is legally accountable for the conduct of another when:
> . . .
>
> (3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to

4

aid such other person in the planning or commission of the offense. . . .

Lyons argues that as a co-buyer he cannot be guilty of the crime of sale of dangerous drugs through the accountability statute. He quotes the general rule that a purchaser of illegal drugs is not an accomplice to the crime of selling drugs. State v. Stokoe (1986), 224 Mont. 461, 464, 730 P.2d 415, 417. He moved for dismissal of Count One after he and the State had presented their respective cases-in-chief, but the motion was denied.

A motion to dismiss a criminal charge because of insufficient evidence should be granted only when there is no evidence upon which a trier of fact could render a verdict. State v. Miller (1988), 231 Mont. 497, 509, 757 P.2d 1275, 1282. This Court's standard of review of the propriety of the trial court's ruling on such a motion is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Downing (1989), 240 Mont. 215, 217, 783 P.2d 412, 414. The requisite elements for holding a person legally accountable for the conduct of another under Montana's accountability statutes are that 1) either before or during 2) the commission of an offense 3) with the purpose to promote or facilitate such commission 4) the person solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense. Downing, 783 P.2d at 414.

5

Turner testified as follows about ordering the marijuana:

Q. Okay. And then what transpired next?

A. Denyce said that she, there was some available that was $25.00 a quarter.

Q. Okay.

A. Okay. And David said that he wanted one. And I said well, I wanted one, too, just kind of barged in, too. And nothing was, barged in, the pot was smoked, okay, then --

Q. Okay.

A. Finally, David asked for something about the money part, okay. She needed the money. I said why sure, gets my money out and gave her $25.00.

He testified as follows concerning the delivery of the marijuana:

Q. Now, what were the arrangements for getting the pot? You gave the money to Denyce and then you left. You mean -- what was supposed to be, mailed to you or what?

A. Okay, there was a mix-up there, right. She said she had to go to work and she was telling Dave about how the deal was going. I didn't understand that totally how it was going to go down. So then when she left, I asked Jamie, I said, well, what is the deal? She said she got to go to work and, you know, I was worried about did I get ripped off for $25.00. And I am going to get some- thing? And she said well later then around 6:00 or something. So anyway, I was supposed to be there later.

Q. So whatever that conversation was, you were to go back to the Lyons' residence and pick up the marijuana?

A. Right.

Q. And did you go back to the Lyons' residence and pick up the marijuana?

A. Yes, I did.

. . .

6

Q. And who was present?

A. David Lyons, Jamie Popp again, me and Angela Smith.

Q. Did Denyce or Mike show up at any time when you were there the second time?

A. No, sir.

Q. Okay. Was there any marijuana that you saw the second time?

A. Oh, yes, sir.

Q. How did it come about that you saw marijuana?

A. Well, David told Jamie to get it out, okay.

Q. Okay. And then what did Jamie do?

A. Got it out of her purse.

Q. Okay. And how was it packaged?

A. Okay, it was rolled in one bag. David -- well, I suppose I should back up.

Q. Let's just go through it?

A. Okay.

Q. You said all in one bag. Was it supposed to be in one bag?

A. Hmmm, well, I didn't think so. I thought that I was supposed to get a package, okay.

Q. Who else was supposed to get a package?

A. David was supposed to get a package.

Q. And was anything said about why it was in one package?

A. Yes. First told the story there is none for you.

Q. Is that what somebody said?

7

A.   David Lyons said.

Q.   Okay.   And how did you react to that?

A.   I started whining, okay.

Q.   Define whining.

A.   Crying around, you know.   He said there was only some for him.

Q.   Okay.

A.   And I asked him, I said, can't I split it with you? And you know, I wanted to get something out of the deal.

Q.   Is that unusual to do that if you don't get your marijuana to whine?

A.   No, sir, it is not.

Q.   Okay.   So you complained about it.   Did he offer to give you your money back?

A.   No, sir, I don't believe that he did.   It was all a joke.

Q.   It was a joke they wouldn't give you any?

A.   Yes.

Q.   How did you know that it was a joke?

A.   Well, he told me finally, the bag, we had to split it in half.   Anyway, my part was already in there.

Q.   All right.   And so the bag comes out of the purse and then it is split?

A.   No, sir, it is not split yet.

Q.   Do you get your part?

A.   Yes, sir.

Q.   How does that come about?

A.  Well, David told somebody to grab something to split it.  I think Angela went to the kitchen to get something, a plate or piece of cardboard.  And then Jamie split it, okay.  And I said, I get to pick.  Usually that is how it is.  Whoever has the drug splits it and the other person gets to pick, okay.

Q.  Okay.

A.  So I picked but Dave didn't like the way that I picked because I picked the big bag.  So then he got in it and, you know, mixed it around more so it looks better.  And then I got to pick my bag.

.  .  .


Q.  What did you do with the marijuana after that?

A.  Wrapped it up and put it in my pocket.


In the other cases cited by the State in which defendants were convicted of sale of dangerous drugs under the accountability statutes, there was evidence that the defendants in some manner promoted or facilitated the drug sales.  State v. Gommenginger (1990), 242 Mont. 265, 790 P.2d 455 (with respect to Count IV, defendant's wife told the buyer that she could deliver some cocaine to him only after she conferred with defendant; defendant drove his wife to deliver the cocaine to the buyer); State v. Downing (1989), 240 Mont. 215, 783 P.2d 412 (defendant admitted that he helped set up the deal; he arranged a meeting and was paid; he began the search for drugs for the buyer with the seller, but did not intend to limit his search to the seller).

In the present case, there was no evidence that Lyons had a purpose to promote or facilitate the sale of marijuana to Turner. This drug deal was not pre-arranged; it was not the reason Turner went to Lyons's apartment. Turner testified that he "barged in" on the sale by Larson to Lyons to place his own order. The delivery of the marijuana to Lyons's apartment and Lyons's participation in dividing the marijuana into separate bags for himself and Turner show nothing more than that Lyons acted to obtain some marijuana for himself. Even when viewed in the light most favorable to the State, the best that can be said is that Lyons and Turner were parallel buyers from Larson.

We conclude that, in this case, no rational trier of fact could have found all of the elements of sale by accountability beyond a reasonable doubt and that this case falls under the general rule set forth in Stokoe that the purchaser of drugs is not an accomplice to the crime of selling drugs. We therefore hold that the District Court erred in denying the motion to dismiss Count One. Because of this holding, we will not address the issue Lyons raised concerning the surveillance tape introduced into evidence on Count One.

## II

Did the court err in permitting law officer opinion testimony regarding the credibility of the informant?

The State concedes this issue. In State v. Webb (Mont. 1992), 828 P.2d 1351, 1356, 49 St.Rep. 236, 239, this Court ruled that character evidence regarding a witness is not admissible into evidence solely on the basis that the witness has testified concerning a material fact and the testimony conflicts with that of the defendant. In the present case, the District Court allowed rebuttal character testimony about Turner for precisely that reason --that Turner's testimony as to material facts concerning Counts Two and Three conflicted with Lyons's testimony as to the same facts. We therefore reverse Lyons's convictions on Counts Two and Three.

### III

Was other crimes evidence admitted in violation of Just?

The evidence under this issue which relates to Counts Two and Three was testimony by Mike Brannon that he had obtained some pills from Lyons. No immediate objection was made to this testimony, but a brief was filed and an objection was made the next day.

Because no objection was made at the time and because Brannon's testimony was unresponsive to the question he was asked, we hold that no violation of Just has been shown. If he testifies on retrial, Brannon should be advised not to mention obtaining pills from Lyons unless he is specifically asked about it.

## IV

Did the court err in refusing to give defendant's entrapment instruction concerning Count Three, the sale of four pills?

The District Court refused Lyons's offered entrapment instruction on the basis that an entrapment defense would be inconsistent with Lyons's defense that the sale of the four pills did not occur. The State did not brief this issue on appeal.

Lyons cites Mathews v. United States (1988), 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54, in which the United States Supreme Court held that, even if a criminal defendant denies one or more elements of the crime with which he is charged, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment. While we do not wish to prejudge the evidence which may be presented on retrial of Counts Two and Three, we call the attention of the District Court to the Mathews opinion.

Reversed as to Counts One, Two, and Three. Remanded with instructions that Count One be dismissed.

_____
Chief Justice

We concur:

_John Conway Harrison_

_Terry Trieweiler_

_[signature]_

_R. C. McDonough_
Justices

13