No. 99-061

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 227

STATE OF MONTANA,

Plaintiff and Respondent,

v.

GARY TESKE,

Defendant and Appellant.

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Hill,

Honorable John Warner, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Carl S. White, Public Defender, Havre, Montana

For Respondents:

Honorable Joseph P. Mazurek, Attorney General; Cregg W. Coughlin,

Assistant Attorney General, Helena, Montana

David G. Rice, County Attorney, Havre, Montana

Submitted on Briefs: September 2, 1999

Decided: September 28, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶ **A jury convicted Gary Teske of theft and burglary in a trial before the Twelfth Judicial District Court, Hill County. Teske appeals. We affirm.**

¶ **The issue is whether the District Court erred in ruling that sufficient corroborating evidence supported the testimony of Tom Peterson, a witness legally accountable for the offenses of which Teske was convicted.**

¶ **At noon on February 25, 1998, Havre, Montana resident Rocky Preeshl went home for lunch and discovered that his home had been burglarized sometime that morning. The rear screen door had been propped open and a glass pane in the front door had been shattered. Missing from the home were a satellite receiver, a television set, a stereo receiver, a CD changer, stereo speakers, and jewelry. Also missing was a compact disk case for a disk by the musical group "No Doubt." The missing items were valued at about $2,500.**

¶ Herbert Williams, a retired Havre police officer, lived across the street from Preeshl. He told the officers investigating the crime that he had been sitting on his front porch drinking coffee that morning when he observed a maroon Eagle station wagon with two people inside drive by slowly. He then saw the car come back around the block, drive up the alley, stop, and quickly back into the driveway behind Preeshl's house. A short while later, the maroon station wagon pulled out of Preeshl's driveway, drove up the alley, and drove past Williams' house again. The maroon station wagon was familiar to Williams, and he showed officers the location where he had seen it parked in the past, a few blocks away.

¶ The maroon station wagon was parked, with its engine still warm, where Williams had previously seen it. In the back of the car lay a CD case by the musical group "No Doubt." Motor vehicle records showed that the owner of the station wagon, Beth Jackson, resided in a nearby apartment building.

¶ The officers questioned Jackson, who was at home. She told them no one else had used her car that morning and that the "No Doubt" CD case was not hers and she had no idea how it got there. She also told them that tools in the back of her car belonged to her boyfriend, Tom Peterson, whom she had just given a ride to work. She allowed the officers to look around her apartment and her car, but then told them she must leave to attend a class.

¶ The officers went to Peterson's place of employment to interview him. Jackson, instead of going to class, followed them. The officers, increasingly suspicious that Jackson knew more about the burglary than she was admitting, asked her to stay away from Peterson while they interviewed him.

¶ On close questioning, Peterson said that Gary Teske, an acquaintance, had come to Jackson's house shortly before noon with blood on his hand, asking for a ride. Peterson admitted to having given Teske the ride he requested, in Jackson's car and with her permission. Peterson stated that Teske directed him to park in the driveway of Preeshl's house. According to Peterson, Teske got out of the car, went into the house, and brought two armloads of "stuff" out, which he then proceeded to put in the back of the car. Peterson told the officers that, at the time, he was not sure that Teske was stealing, but that he waited in the car and did not help Teske in any way. He told them that he then drove Teske home, where he helped him unload the "stuff," after which he promptly returned the car to Jackson and told her what had

**happened.**

**¶ After interviewing Peterson, the officers confronted Jackson outside Peterson's workplace and told her that Peterson had been honest and told them "everything." Jackson admitted to having lied to them earlier and confirmed Peterson's story.**

**¶ Over Teske's objection, the District Court allowed Peterson to testify at trial. The State also presented as witnesses Jackson, the police officers, and Williams. Following his conviction, Teske appeals the ruling that Peterson's testimony was sufficiently corroborated. Discussion**

**¶ Did the District Court err in ruling that sufficient corroborating evidence supported the testimony of Tom Peterson, a witness legally accountable for the offenses of which Teske was convicted?**

**¶ Section 46-16-213, MCA, provides:**

> **Testimony of person legally accountable.** A person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense.

Before trial, Teske moved to exclude Peterson from testifying based on the above statute. At a hearing on the motion, the State presented the proposed testimony of Jackson and Peterson. The court ruled that Peterson was, to some degree, an accomplice, but that the presence of the "No Doubt" CD case in Jackson's car and Williams' statement about what he had observed, together with Jackson's testimony, was sufficient corroboration for Peterson's testimony.

**¶ The parties differ somewhat on the standard of review for the sufficiency of corroborating evidence. Teske cites the standard generally used for sufficiency of the evidence: whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.** *See State v. Downing* **(1989), 240 Mont. 215, 217, 783 P.2d 412, 414. The State cites more specific principles addressed to the**

sufficiency of corroborating evidence:

> To be sufficient, corroborating evidence must show more than that a crime was in fact committed or the circumstances of its commission. It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged. But corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a *prima facie* case against him. Corroborating evidence may be circumstantial and can come from the defendant or his witness.

*State v. Kemp* (1979), 182 Mont. 383, 387, 597 P.2d 96, 99 (citations omitted). The Court has combined these tests. The principles cited by the State are used to determine whether the accomplice testimony is admissible; the general rule cited by Teske is used to determine whether a conviction based in part upon accomplice testimony should be upheld. *See, e.g., State v. Berger*, 1998 MT 170, ¶¶ 23-34, 290 Mont. 78, ¶¶ 23-34, 964 P.2d 725, ¶¶ 23-34.

¶ **Teske argues that Williams' testimony did not corroborate Peterson's, in that Williams testified that the burglars' vehicle passed his house three times. In contrast, Peterson testified that he drove directly to and from the Preeshl residence and did not pass by either before or after stopping. Teske further points out that Preeshl's testimony did not corroborate Peterson's testimony, in that Preeshl testified that the quantity of property taken from his house could not have been moved as Peterson testified--by Teske in two armloads. The State responds to these arguments by pointing out that it was not argued below that Williams' or Preeshl's testimony was corroborative of Peterson's testimony. Only Jackson's testimony was cited as corroboration.**

¶ **Teske argues that Jackson, as Peterson's girlfriend, was not an independent source of evidence as is required under the statute. He does not go so far as to argue that Jackson, too, was an accomplice, which is not established under the record. This argument, then, merely goes to Jackson's credibility, which is for the finder of fact to determine.** *See State v. Flack* **(1993), 260 Mont. 181, 189, 860 P.2d 89, 94.**

¶ **Jackson testified that she and Peterson found Teske on the front porch of her house on the morning of the burglary, "panicky" and cradling a bleeding hand. She testified that Teske would not say how he hurt his hand, but that he asked for a ride**

home, which Peterson agreed to give him in Jackson's car. She testified that Peterson returned, shaken, to her apartment a short while later and told her that Teske had gone into someone's house and came out with some "stuff," after which he took Teske and the "stuff" to Teske's home.

¶ Peterson's testimony was corroborated not only by Jackson's testimony but also by the undisputed physical evidence of the "No Doubt" CD case found in the back of Jackson's car. This raises more than a mere suspicion of Teske's involvement in the crimes. We hold that sufficient corroborative evidence supports the court's decision to allow Peterson to testify.

¶ As the State has pointed out, Peterson may well have been more involved in the theft of Preeshl's property than he was willing to admit. However, the factual question before the jury was whether Teske was guilty of the crimes of burglary and theft. Viewing the evidence in the light most favorable to the prevailing party, the State, there is sufficient evidence in the record to allow a rational trier of fact to find, beyond a reasonable doubt, the essential elements of the crimes with which Teske was charged.

¶ We affirm the judgment entered by the District Court.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER