**Effie Mae PARSONS, Administratrix of the Estate of Ralph W. Parsons, Jr., Deceased, Appellants,**

v.

**Dr. Julian D. WOOD, M.D., and the Pace-Chambers Clinic, Appellees.**

No. 49630.

Supreme Court of Oklahoma.

June 6, 1978.

Rehearing Denied Oct. 16, 1978.

James R. Lloyd, Tulsa, Delbert Brock, Tulsa, and L. G. Hawkins, Sapulpa, for appellants.

Dale Reneau, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellees.

IRWIN, Justice.

The principal defendant in this proceeding is appellee, Julian D. Wood, M.D., and the appellees will be referred to as appellee.

Appellant is the mother of decedent, Ralph W. Parson, Jr., who died in 1972 at the age of 25, and she is also the administratrix of his estate. Appellant commenced a malpractice action against appellee to recover damages resulting from appellee's alleged negligence. Appellee filed a motion for summary judgment and submitted with such motion were the depositions of the appellant, the appellee, and Drs. M. and L., two other physicians also involved in Ralph's examination and treatment. Also submitted were certain items of documentary evidence, such as medical reports. The trial court sustained appellee's motion for summary judgment and appellant appealed.

On assignment to the Court of Appeals the judgment of the trial court was reversed and remanded on grounds that the evidence presented to the trial court demonstrated unresolved material factual controversies. Appellees seek certiorari.

Briefly summarized, appellant alleged in her petition that on January 29, 1970, and continuing through March 31, 1970, appellee negligently examined, diagnosed and treated Ralph, and that appellee allowed Ralph's appendix to burst resulting in peritonitis and the spreading of the deadly carcinoma cells through Ralph's abdominal cavity, either expediting or causing Ralph's death.

According to the record presented, appellee had been Ralph's personal physician since Ralph's early childhood. For many years Ralph had experienced classic symptomology of a chronic colon disease, ulcerative colitis. There is no dispute as to the pre-existing condition of ulcerative colitis and Ralph's earlier sicknesses and hospitalizations.[1] Symptoms of the disease in Ralph were cramping abdominal pain, diarrhea, fever, loss of appetite and, in episodes of acute aggravation, bloody bowel movements. After extensive diagnostic evaluation in the Mayo Clinic at age twelve, Ralph was referred back to appellee for continued out patient treatment consisting of combined dietary and medical management of the disease. Despite treatment, Ralph continued to have periodic episodes of distress from his condition, and such recurrent problems are typical of ulcerative colitis patients.

In late February of 1970, when approximately 23, Ralph again saw appellee complaining of upper abdominal pain. Appellee gave Ralph a routine physical examination and concluded he was experiencing a recurrence of his colitis condition combined with

---

1. According to appellee's deposition, he first saw Ralph concerning his colon in 1954. In May, 1958, Ralph had Shigella dysentery. He sent Ralph to the Mayo Clinic in 1959. February 28, 1962, to March 4, 1962 Ralph had an acute viral gastroenteritis and was hospitalized. Ralph was hospitalized for ulcerated colitis from Nov. 26, 1962 to Nov. 28, 1962; from March 7, 1963 to March 10, 1963; from July 3, 1963 to July 6, 1963; from July 3, 1964 to July 9, 1964; and from July 15, 1964 to July 19, 1964. Ralph saw appellee for an infection in January 1967 and in July 1967, for a relapse of his ulcerated colitis. Ralph visited appellee in February, 1968 and had an acute viral gastroenteritis, and in Feb. 1969, had an upper respiratory infection. Ralph visited appellee concerning an infection on January 29, 1970, and then on February 27, 1970, Ralph suffered upper abdominal pain and again visited appellee.

either indigestion or peptic ulcer. A muscle relaxant was prescribed and Ralph was sent home with instructions to report back in a few days. Ralph returned on March 2nd complaining of increased upper abdominal pain, chills, fever and other generalized aches and pains. Again appellee gave Ralph a physical examination and had a urinalysis run. Appellee did not take Ralph's temperature assuming it was elevated. The diagnosis after this second visit was chronic ulcerative colitis and influenza. Ralph was given a penicillin injection, other medication and scheduled for gastrointestinal x-rays the following day. Before the x-rays could be taken, Ralph complained of acute abdominal pain and was brought to the emergency room of the local hospital on the appellee's direction. Diagnosis by appellee was that of a perforated viscus (abdominal organ) most probably perforated peptic ulcer or possibly as a consequence of recurrent aggravation of existing ulcerative colitis. Ralph was immediately transferred to Presbyterian Hospital in Oklahoma City for surgical consultation with Dr. M.

Dr. M. examined Ralph and after a standard physical, blood work and other tests, concluded that cause of Ralph's condition was acute appendicitis with probable rupture and attendant peritonitis. Immediate surgery confirmed Dr. M.'s diagnosis and resulted in an additional finding. Ralph had adenocarcinoma, cancer of the colon. Dr. M. removed Ralph's appendix and treated him for the peritonitic infection. Ralph's post-operative recovery was "reasonably smooth", and he was discharged to continue his convalescence at home.

The convalescence was not "smooth". Ralph experienced an intestinal obstruction and was readmitted for further surgery in less than a month. At this time, Dr. M. removed Ralph's colon entirely in an attempt to check the spread of the cancer, and found no evidence of peritonitis. This surgery and subsequent surgical and medical treatment were not successful in arresting the spread of the cancer. More than a year and a half later, Ralph died. In answer to the following question: "Is it possible that due to the ruptured appendix and peritonitis, is it possible that this could have spread the cancer cells to other parts of the abdomen; namely, to the colon?", and Dr. M. said "No". There is absolutely no evidence to indicate the cause of death was anything other than adenocarcinoma, cancer of the colon.

All the foregoing facts were presented to the trial court in the depositions and other evidentiary materials submitted in conjunction with appellee's motion for summary judgment. Appellant offered no other evidence on her behalf. In *Weeks v. Wedgewood Village Inc.*, Okl., 554 P.2d 780 (1976), we said:

" * * * Rule 13 is intended to permit a party to pierce the allegations of the pleadings to show that the facts are otherwise than alleged.

If the defendant introduces evidence which indicates there is no substantial controversy as to a fact material to plaintiff's cause of action, and this fact is in the defendant's favor, the plaintiff has the burden of showing that evidence is available which would justify trial of the issue."

 Appellant's failure to put on evidentiary materials of her own does not necessarily preclude her from demonstrating that an actual controversy exists as to a material fact issue in the case. The party against whom the motion for summary judgment is directed can always show through the movant's own evidence the existence of controverted fact issues. This is precisely what appellant attempted to do in the case at bar. Using appellee's deposition and clinical notes, appellant documented the diagnostic procedures employed in examining Ralph upon the advent of his abdominal complaints. Using the deposition of Dr. M. appellant documented the diagnostic procedures employed by the surgeon upon receiving Ralph as a patient. The diagnostic approaches of the two physicians dif-

fered. Dr. M. as it turns out, correctly diagnosed Ralph's condition as acute, probably ruptured, appendix, while appellee thought the condition was recurrence of pre-existent ulcerative colitis or peptic disease. Appellant, in effect, argues that since the evidence shows that appellee incorrectly diagnosed Ralph's illness as a recurrence of his ulcerative colitis condition, the evidence would necessitate reversing the trial court's summary judgment ruling and submission of the cause to the jury. It does not necessarily follow from the evidence presented that Dr. M.'s correct diagnosis was the product of a proper adherence to the prevailing professional standard of care or that appellee's diagnostic procedures were below the prevailing professional standard of care. "A wrong diagnosis or mistake in diagnosis does not prove that it was a negligent one." *Pearce v. United States*, 236 F.Supp. 431 (W.D.Okl.1964). No evidence was offered or pointed to which would fairly raise the inference of culpable negligence. On the contrary, the only physician queried on the issue, Dr. M., specifically said that appellee "did not deviate from sound practice."

■ Nor can appellant get around the total failure of the evidence to establish the essential causal link between the asserted act of malpractice and the injuries suffered by the deceased. The only medical evidence presented, that of the treating surgeon and the pathologist, is specific, unequivocal and certain that at the time of the second surgery less than a month following the ruptured appendix there was no evidence of residual peritonitis. All of the deceased's tragic sufferings thereafter are unanimously attributed to the progression of his terminal disease. After appellee introduced evidence which indicated there were no substantial controversy as to a fact material to appellant's cause of action, and this fact was in appellee's favor, the burden then shifted to appellant to show evidence available which would justify a trial. *Weeks v. Wedgewood Village*, supra.

The closest appellant comes to attempting to establish causation was an effort to secure from Drs. M. and L., the surgeon and pathologist respectively, opinions as to whether the rupture of the appendix could possibly have caused or accelerated or spread the cancer. The undisputed evidence was to the effect that the carcinoma preceded and precipitated the appendicitis. Further, while both doctors admitted the theoretical "possibility" the cancer was accelerated or spread by the rupture of the appendix, both also testified there was not the slightest indication such had taken place with this patient. Had the ruptured appendix spread the disease, the cancerous tissues would have been found to have developed, at least in some instances, in the abdominal cavity and invaded adjacent organs. Here all the cancerous tissues biopsied and examined originated within the colon spreading from that organ to others. The only conclusion to be reached from the only medical evidence presented is that appellee's asserted act of negligence had nothing whatsoever to do with the deceased's condition, suffering or deterioration.

■ There is no evidence in the record whatsoever from which it can be said that appellee's incorrect diagnosis of Ralph's illness was negligent nor is there any evidence tending to support the assertion that the incorrect diagnosis contributed in any way to Ralph's terminal illness. The uncontroverted record conclusively shows that Ralph's illness and death resulted from cancer of the colon, not as a result of appellee's examination, diagnosis or treatment.

CERTIORARI GRANTED; COURT OF APPEALS DECISION VACATED; and JUDGMENT OF THE TRIAL COURT AFFIRMED.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, WILLIAMS, BERRY, BARNES and DOOLIN, JJ., concur.

SIMMS, J., concurring in part and dissenting in part.