**Darlene R. McFEE, now Darlene R. Jefferson, Appellant,**

v.

**TULSA OB–GYN CENTER, Appellee,**

**Dr. W.R. Campbell, Dr. Glenn Haswell, Dr. Kathleen Glaze, Dr. John R. Nettles, and Dr. J.R. Thompson, Defendants.**

**No. 69464.**

Supreme Court of Oklahoma.

Sept. 25, 1990.

Gregory P. Robinson, Donald G. Hopkins, Kimberly M. Steele, Larry L. Oliver & Associates, P.C., Tulsa, for appellant.

Joseph A. Sharp, John H.T. Sheridan, Best, Sharp, Holden, Sheridan & Stritzke, Tulsa, for appellee.

ALMA WILSON, Justice:

The sole issue in this appeal is whether summary judgment was improperly granted by the trial court to the appellee. We find that it was. We accordingly vacate the opinion of the Court of Appeals and reverse the judgment of the trial court.

On August 18, 1981, Darlene Jefferson, the appellant, gave birth to a son at St. John's Medical Center in Tulsa, Oklahoma. Mrs. Jefferson had received her prenatal care from the appellee, Tulsa OB–GYN Center, and one of the doctors there had examined her for her six-week checkup after the birth. Subsequent to the delivery, Mrs. Jefferson experienced leakage of feces from her rectum into her vagina. In an attempt to correct the condition, surgery was performed in February and again in March of 1982. On August 17, 1983, Mrs. Jefferson filed her petition alleging that the defendants had negligently performed an episiotomy [1] during the delivery of her child. She alleged that the incision was made too far and too deep causing a perforation which damaged the vagina, rectum and other anatomic organs located in the operative area.

In her deposition Mrs. Jefferson stated that each time she went to the clinic before the birth of her son, she saw a different

---

1. An episiotomy is a surgical procedure made to afford more room for the delivery of the baby by opening the canal through which the baby is delivered. The length of the cut is dependant upon the discretion of the physician who determines the length necessary to avoid tearing of the tissues. (Depositions of Dr. Campbell and Dr. Haswell.)

doctor. She went to the clinic every month for a time and then every week because the clinic was checking her blood sugar. At the time of the delivery she did not know the name of the doctor who delivered the baby. She remembered the episiotomy. She was given a pain medication to deaden the pain while she was being stitched up. She stated that she knew that Doctor Thompson and Doctor Glaze were in the room during the delivery. Dr. Glaze met her in the recovery room and examined the episiotomy. The day after the birth, she noticed that a stitch had come out. The nurse who inspected the incision stated that everything was okay and told her not to worry about it.

She further testified that after her release from the hospital she began to experience problems. She noticed a strong odor from her vagina and leaking from the anus. She called the clinic about two weeks before to tell them about the leaking and the odor. The nurse with whom she spoke told her to wait to come in until her scheduled six-weeks examination. When she went in for the exam she again saw a doctor whom she did not know, but did describe. She had seen him before at St. John's. She explained the problems to him and that her vagina and rectum were so close together that she could not tell the two apart. She further testified that the doctor told her that there was nothing wrong, that she just had a bloody discharge which was common after having a baby. She did not believe him.

On January 31, 1982, she went to the emergency room at Doctor's Hospital where Dr. Elrod examined her and told her that she was leaking from her rectum into her vagina. She was referred to Dr. Capehart who admitted her on February 2, 1982 and operated the next day. She was released on February 7, 1982. She went to Hillcrest Hospital for a second operation on March 16, 1982, and was released March 23, 1982. Dr. Capehart was again the surgeon. She now has to have enemas after every bowel movement, has infertility problems as a probable result of infection due to the leakage, and is no longer having menstrual periods. She testified that she

may have to have a hysterectomy, and that there is still a possibility of another operation on her rectum which would result in a colostomy. These medical problems make sexual relations difficult or impossible because of the pain involved.

The depositions of the named defendant-doctors reveal that the clinic was connected with the University of Oklahoma Medical School in that residents were assigned to the clinic from the school. Residents were also assigned to St. John's Medical Center. Dr. Campbell examined her at the clinic the day of her delivery and sent her to the hospital for the birth. The records available to the defendants revealed that Dr. Larson signed the delivery note. The general procedure is that the one who signs the delivery note is the same person who performed the delivery. That note also indicated that the episiotomy was a fourth degree midline, which goes through the skin and mucosa of the vagina, through the muscles of the perineum, through the sphincter, and into the rectal mucosa. When the sphincter is cut, the complications can include bleeding and a failure to heal. If it does not heal, there may be fecal incontinence. Prior to the depositions the doctors learned that a fistula had formed in Mrs. Jefferson. Dr. Haswell testified that there was no evidence in the medical records that one formed during her hospitalization. He testified that it may take weeks for a fistula to form and that if one forms, it needs to be excised and the defect repaired. Dr. Haswell further related that the records showed that on October 10, 1981, Mrs. Jefferson was examined by a third-year medical student named Johnson, and the report was cosigned by Dr. Campbell who would have been supervising the student. The note of the exam stated that the rectovaginal wall was okay.

Dr. Campbell, in his deposition, testified that he had only seen one fistula during his career, and it was asymptomatic. Dr. Glaze, in her deposition, testified that the episiotomy which was performed on Mrs. Jefferson was the most extensive cut that can be done. She stated that she examined Mrs. Jefferson's episiotomy on the third

day after delivery. She is the doctor who discharged Mrs. Jefferson. She testified that a fistula is detected by a rectal-vaginal exam, although sometimes it may be visually observed. She stated that Mrs. Jefferson's chart indicated J.M. Johnson did the six-week follow-up exam, and Dr. Campbell cosigned the chart. She further testified that patients develop fistulas because they do not heal properly. Fistulas may develop due to the failure to properly suture the episiotomy in the area of the sphincter muscle. In her deposition, Dr. Glaze further testified that she had spoken to Dr. Larson, who told Dr. Glaze that she believed she (Dr. Larson) had delivered Mrs. Jefferson's baby. Dr. Haswell testified that Dr. Larson was a resident of the medical school.

The petition filed by Mrs. Jefferson alleged that the defendants were negligent in performing the episiotomy and in failing to discover the damage after it was done. The defendants moved for summary judgment alleging that an examination of all of the pleadings, affidavits, and depositions in a light most favorable to the plaintiff revealed that there was no substantial controversy as to any material fact. (12 O.S. Supp.1989, ch. 2, app.—Rules For District Courts of Oklahoma, Rule 13.) The plaintiff failed to answer the motion. Summary judgment was granted to all defendants on June 21, 1985. On July 1, 1985, the plaintiff filed a motion for new trial, as to the clinic only, alleging no notice of the hearing. On September 12, 1986, the trial court granted the motion as to the clinic only and dismissed the doctors from the lawsuit as of June 21, 1985. There was no appeal regarding the dismissal of the doctor-defendants from the lawsuit.

In the plaintiff's brief responding to the second motion for summary judgment, the plaintiff admitted that the thrust of the lawsuit was against the clinic and not the individual doctors. The response brief also noted that the thrust of defendants' motion for summary judgment was that the depositions of the physicians revealed that they were not involved in the delivery of the child. The reply by the clinic was that there was no substantial controversy concerning the fact that the clinic had no relationship with, and therefore no duty to the plaintiff at the time she incurred the alleged injuries. The clinic did not dispute that it undertook to provide postpartum medical care to Mrs. Jefferson.

■ District Court Rule 13 covers the subject of summary judgment. The rule is intended to permit a party to pierce the allegations of the pleadings to show that facts are otherwise than as alleged. *Weeks v. Wedgewood Village, Inc.*, 554 P.2d 780, 784–785 (Okla.1976). The reviewing court is limited to the issues presented at the time the motion for summary judgment was granted. *Northrip v. Montgomery Ward & Co.*, 529 P.2d 489, 494 (Okla.1974). The issue presented for review, and the testimony from the depositions which the clinic cited to support its view was that the clinic had no relationship with Mrs. Jefferson at the time of her injuries. If there appears to be a controversy over that issue supported by admissible evidence from the record presented to the trial court, then summary judgment was improper.

The reply by the clinic cites only four lines from the deposition of Dr. Glaze and five lines from the deposition of Dr. Campbell to support their position that St. John's hospital was independent of the clinic. The balance of the reply is argument to the trial court concerning the clinic's lack of duty to Mrs. Jefferson. Its reply brief argues that the plaintiff made "absolutely no reference to any specific facts which support her allegations." It concludes that the motion for summary judgment "must be deemed admitted." The clinic's reply further argues that Rule 13 provides for reference to pages, paragraphs, and/or lines of depositions to support the argument against a motion for summary judgment.

A review of the cited and quoted material in both the motion for summary judgment and the reply by the clinic to plaintiff's response to the motion establishes two things: (1) the defendant-doctors did not deliver the baby or perform the episiotomy, and (2) the clinic and the hospital are

separate entities. Nothing in the response by the plaintiff appears to question those two facts. The controversy is over argument based upon those two facts. The clinic concludes that therefore it owed no duty to the plaintiff, but the plaintiff responds the clinic's doctors failed to discover the fistula in the follow-up examination, and failed to inform the plaintiff of the possible consequences and precautions to take as a result of having the episiotomy. The clinic cites no portion of a deposition in its motion for summary judgment and in its reply to plaintiff's response which rebuts plaintiff's argument. The wording in *Parsons v. Wood*, 584 P.2d 1332, 1334 (Okla. 1978), concerning response to a motion for summary judgment is particularly applicable to the case at bar. In *Parsons* this Court held:

> Appellant's failure to put on evidentiary materials of her own does not necessarily preclude her from demonstrating that an actual controversy exists as to a material fact issue in the case. The party against whom the motion for summary judgment is directed can always show through the movant's own evidence the existence of controverted fact issues.

In *Spirgis v. Circle K Stores, Inc.*, 743 P.2d 682 (Okla.App.1987) (Cert. den., 1987. Approved for Publication by the Supreme Court), the appellant had failed to respond to a motion for summary judgment. The trial court granted the motion but the Court of Appeals reversed and remanded. The Court of Appeals held:

> The granting of summary judgment ultimately depends upon a determination by the trial court of whether there is a substantial controversy as to any material fact. Even when no counterstatement has been filed, it is still incumbent upon the trial court to insure that the motion is meritorious. The trial court must examine the evidentiary materials supporting the motion and if all the material facts are addressed and are supported by admissible evidence, those facts are admitted and judgment for the movant is proper. However, if the movant has not addressed all material facts, or if one or more such facts is not supported by admissible evidence, judgment for the movant is not proper.

■ The uncontroverted evidence reveals that the clinic was responsible for the obstetric care of Mrs. Jefferson. Their doctors treated her before the birth of her child, one of their doctors sent her to St. John's hospital, and the clinic's doctors were responsible for Mrs. Jefferson's care subsequent to the birth of the child. Accordingly, whether the clinic owed a duty to Mrs. Jefferson which it breached is still a fact in controversy. The only fact which is no longer in controversy is that none of the named defendant-doctors performed the episiotomy.

Because there are still material facts in controversy which allow for different inferences, summary judgment for the clinic was premature. The opinion of the Court of Appeals is VACATED and the judgment of the trial court is REVERSED AND REMANDED.

HODGES, DOOLIN, KAUGER and SUMMERS, JJ., concur.

OPALA, V.C.J., concurs in result.

HARGRAVE, C.J., and LAVENDER and SIMMS, JJ., dissent.