Joel D. BECK and Jacqueline
Beck, Appellants,

v.

PHILLIPS COLLEGES, INC., a Mississippi corporation doing business as Oklahoma Junior College, Inc., an Oklahoma corporation, Appellee.

No. 81873.

Court of Appeals of Oklahoma,
Division No. 1.

Aug. 2, 1994.

Rehearing Denied Sept. 27, 1994.

Jackson M. Zanerhaft, Tulsa, for appellants.

J. Ronald Petrikin, Nancy E. Vaughn, Crowe & Dunlevy, Oklahoma City, for appellee.

## MEMORANDUM OPINION

BAILEY, Judge:

Joel D. Beck and Jacqueline Beck (collectively, the Becks or individually by name) seek review of the Trial Court's order granting summary judgment in favor of Phillips Colleges, Inc. (PCI), d/b/a Oklahoma Junior College, Inc. (OJC) in the Becks' actions for breach of employment contract, wrongful termination, and intentional infliction of emotional distress. In this appeal, the Becks assert material facts at issue, precluding summary judgment.

Joel worked for PCI for several years, working primarily in Oklahoma City. In January 1989, PCI appointed Joel president of OJC in Tulsa. Jacqueline Beck also obtained employment at OJC. PCI terminated Joel from the employment after approximately ten months at OJC, and Jacqueline did not return to OJC after her husband's termination.

The Becks then commenced the present action. PCI moved for summary judgment which the Trial Court granted, and the Becks appeal.

Oklahoma has recognized that under certain circumstances, at-will employ-

ment may be converted to one of implied contract of job security.[1] Factors critical to determining whether an implied contract of job security exists are: (a) evidence of some "separate consideration" beyond the employee's services to support the implied term, (b) longevity of employment, (c) employer handbooks and policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices and (e) promotions and commendations.[2] Inquiry into whether an implied contract exists is normally factual; however, if the alleged promises are "nothing more than vague assurances," the issue can be decided as a matter of law.[3]

■ Although the Becks admit neither of them executed a written employment contract with PCI, they contend PCI made certain written and oral representations creating an implied contract of employment which PCI breached when PCI terminated the Becks. In support of this contention, the Becks rely on letters, memoranda, a PCI policy manual, a video cassette, and oral statements.[4] The Trial Court determined as a matter of law this evidence insufficient to form an implied contract.

After reviewing the record in the light most favorable to the Becks, we agree. That is to say, we find the Becks failed to identify any specific enforceable promises made by PCI regarding job security, and we hold the written instruments simply too vague to constitute an implied contract. Likewise, we further find the Becks failed to identify any specific oral promises which would support the existence of an implied contract,[5] and we hold the oral statements identified by the Becks, like the written ones, are simply too vague to create an implied contract. We therefore conclude that none of the general statements relied on by the Becks rise to the level of assurances necessary to "meet the high threshold for invoking the implied contract doctrine"[6] and, therefore, find the Becks implied contract claim insufficient as a matter of law.

■ Joel next challenges the Trial Court's dismissal of his claim for wrongful discharge, asserting his termination was "contrary to a clear mandate of public policy as articulated by constitutional, statutory, or decisional law."[7] In the support of this claim, Beck alleged his superior at PCI told him to bring certain financial aid files at OJC into compliance with federal rules, but asserts that in order to do so, it was necessary "to perform, or direct others to perform, actions that were immoral and illegal" such as forgery of stu-

1. *Hinson v. Cameron*, 742 P.2d 549 (Okl.1987).

2. *Hinson*, 742 P.2d at 554, 555. See, also, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986) (inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury.")

3. *Dupree v. United Parcel Service, Inc.*, 956 F.2d 219, 221 (10th Cir.1992) citing, inter alia, *Krause v. Dresser Indus., Inc.*, 910 F.2d 674, 678 (10th Cir.1990) (in order to create implied contract, promises must be definite).

4. Of the written instruments, the first is a fairly standard rejection letter; PCI's CEO wrote Beck thanking him for his application for a newly created position but informing Beck the position had been filled by one more qualified. The letter referenced "aggressive expansion plans" and acknowledged Beck's assertion he was prepared "to assume additional responsibilities." The second letter is from Beck to a superior requesting time and support from PCI in order to correct problems at OJC. The memorandum is addressed to all presidents/directors and announces, inter alia, Beck's promotion to OJC with continuing responsibility under PCI's expanded management program. The manual and cassette merely outline suggestions for management and/or termination procedures for use by PCI's college presidents.

5. The oral evidence consists primarily of general statements made during Beck's initial interview, commendations and compliments from PCI, and "indications of lengthy employment" when Beck was promoted and transferred to OJC, all of which Beck claims were inducements for him to accept and continue employment with PCI although Beck admits he could have unilaterally terminated employment at any time.

6. See *Dupree*, 956 F.2d at 222.

7. *Burk v. K–Mart Corporation*, 770 P.2d 24, 28 (Okl.1989); *Hinson*, 742 P.2d at 553.

dents' signatures to documents. Furthermore, Beck contends PCI terminated him because it feared Beck would "report [PCI] to the appropriate authorities."

The record reveals that pursuant to an in-house audit, certain financial aid files at OJC contained irregularities or were found to be incomplete. It is uncontroverted that PCI instructed Beck to bring the files into compliance with federal regulations prior to an independent audit. Beck proffers no evidence that he was ever instructed to perform any illegal acts, but that he did so, reluctantly, on his own. Nor does Beck offer any evidence that PCI feared Beck as a "whistleblower"; on the contrary, PCI had a standard form utilized upon termination of an employee which prohibits that employee from discussing aspects of employment with PCI but which PCI did *not* require Beck to sign upon his termination.

■ A party may not rely on the allegations of his pleadings or the bald contention that facts exist to defeat a motion for summary judgment.[8] Stated another way, the Trial Court's ruling on summary judgment must be based on the record actually presented, not on that which is potentially possible.[9] Where one party moves for summary judgment and sets forth evidence which shows no controversy as to material facts, the burden of proof shifts to the opposing party to present evidence which would justify trial on the issue.[10] In the present case, we find Beck has failed to present any evidence which would justify trial on the issue of wrongful discharge. Accordingly, we reject this proposition.

■ Next, Jacqueline asserts error by the Trial Court in dismissal of her breach of oral contract and wrongful discharge claims. In support thereof, Jacqueline points out that her husband's superior had requested she be fired; accordingly, Jacqueline "felt" that she was "essentially terminated" at the same time as her husband. However, Jacqueline admits she was not "directly" discharged, and the record reflects no one at PCI ever instructed Jacqueline not to return to work; rather, Jacqueline simply did not return to PCI upon her husband's termination. Thus, because the gravamen of Jacqueline's claims rests upon discharge, not resignation, and because the record is void of any evidence that Jacqueline was discharged, constructively or otherwise, we find this proposition without merit.

■ Finally, the Becks challenge the Trial Court's refusal to allow their claim for intentional infliction of emotional distress to go to the jury. Before such a claim may be submitted to a jury, the lower court must first determine whether the alleged conduct may reasonably be regarded as sufficiently extreme and outrageous; that is, whether a reasonable person could find the conduct so offensive "as to go beyond all possible bounds of decency, and to be regarded as outrageous, and utterly intolerable in a civilized community." [11]

■ In the present case, the record reflects Beck's superior at PCI was unhappy with Beck's job performance and had communicated this to Beck along with suggestions for improvement. Although PCI ultimately discharged Beck, we have heretofore found that discharge not to be wrongful nor in breach of any implied contract. Under these circumstances, we find PCI's conduct may not, as a matter of law, be regarded as sufficiently extreme and outrageous so as to justify submission of the issue to the jury.

8. *Zaragosa v. Oneok, Inc.*, 700 P.2d 662 (Okl.App. 1984); *Culpepper v. Lloyd*, 583 P.2d 500 (Okl. 1978); *Weeks v. Wedgewood Village Inc.*, 554 P.2d 780 (Okl.1976).

9. *Frey v. Independence Fire and Cas. Co.*, 698 P.2d 17, 20 (Okl.1985); *Northrip v. Montgomery Ward & Co.*, 529 P.2d 489, 494 (Okl.1974).

10. *American Nat'l. Bank & Trust Co. of Shawnee v. Clarke & Van Wagner*, 692 P.2d 61 (Okl.App. 1984); *Stephens v. Yamaha Motor Co., Ltd., Japan*, 627 P.2d 439 (Okl.1981); *Parsons v. Wood*, 584 P.2d 1332 (Okl.1978).

11. *Breeden v. League Services Corp.*, 575 P.2d 1374, 1377 (Okl.1978).

Thus, and under the specific facts and circumstances of this case, we find no error by the Trial Court in granting summary judgment to PCI on all of the Becks' claims. The order of the Trial Court granting summary judgment to PCI is therefore AFFIRMED.

HANSEN, P.J., and JONES, J., concur.