John M. HAYES, Appellant,

v.

EATERIES, INC., an Oklahoma corporation, d/b/a Garfield's, Appellee.

Nos. 78,415, 78,761.

Supreme Court of Oklahoma.

Oct. 17, 1995.

Jan Preece Gaddis, Oklahoma City, for Appellant.

Jim T. Priest, Debra B. Cannon, McKinney, Stringer & Webster, P.C., Oklahoma City, for Appellee.

LAVENDER, Justice.

This case has its genesis in the discharge of appellant, John M. Hayes from his employment as an assistant manager at a Garfield's restaurant. We decide whether the trial court correctly granted the motion to dismiss of the employer, appellee, Eateries, Inc., d/b/a Garfield's, for failure of Hayes to state · a claim against it upon which relief could be granted, made pursuant to 12 O.S. 1991, § 2012(B)(6). We hold Hayes' petition was insufficient to state a claim to continued employment under either an express or implied contract theory, and it was insufficient to state a claim for the public policy tort exception to the employment-at-will doctrine. Accordingly, we affirm the trial court's dismissal.

## I. STANDARD FOR REVIEWING MOTION TO DISMISS.

Review of a trial court's dismissal for failure to state a claim upon which relief can be granted is *de novo* and involves consideration of whether a plaintiff's petition is legally sufficient. *Gay v. Akin,* 766 P.2d 985, 989 f.n. 13 (Okla.1988). When reviewing such a dismissal an appellate court must take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them. *Great Plains Federal Savings and Loan Association v. Dabney,* 846 P.2d 1088, 1090 f.n. 3 (Okla.1993). "A pleading *must not* be dismissed for failure to state a legally cognizable claim *unless* the allegations indicate *beyond any doubt* that the litigant can prove *no* set of facts which would entitle him to relief." *Frazier v. Bryan Memorial Hospital Authority,* 775 P.2d 281, 287 (Okla.1989) (emphasis in original). The above standards guide our review in this case.

## II. FACTS AND PROCEDURAL HISTORY.

Hayes alleged two causes of action or theories of recovery in his trial court petition. The following facts are taken from the petition, unless otherwise indicated. In support of his first theory Hayes alleged essentially the following: In May 1990 he had been employed at the Stillwater Garfield's for about two years· and had recently been promoted to assistant manager. He was led to believe he would be employed as long as he did an adequate job and performed his duties. On May 29, 1990, Hayes was terminated despite the fact he had at all times

performed his job satisfactorily and there were no grounds for his discharge. Hayes was terminated in violation of his contractual entitlement to continued employment.

In support of his second theory Hayes alleged: He was discharged because he reported and was attempting to investigate theft of property and embezzlement from Garfield's. Accordingly, his discharge violated the public policy of Oklahoma and constituted the tort of wrongful discharge.

As can be seen, the allegations in Hayes' petition are extremely general. He does not indicate the person who terminated him, who he believed was embezzling from Garfield's, or who he reported any theft or embezzlement to. From what we can glean from Hayes' brief in the trial court and his submissions on appeal it appears he asserts it was his supervisor, i.e. the manager at the Stillwater Garfield's, that was embezzling money from the restaurant, that Hayes either directly or indirectly confronted this manager with his concern about missing money, that the manager had Hayes sign a statement that he, Hayes, had left the restaurant and/or restaurant safe unlocked on one occasion and that it was this manager who terminated him. We also glean from Hayes' submissions that he was going to continue to investigate the embezzlement he had uncovered and he was going to report it and this is the reason the manager fired Hayes. Hayes also informs us in his appellate submissions that after his discharge the manager was actually charged and convicted of six counts of embezzlement from Garfield's.

In essence then, Hayes asserted two claims. The first a breach of contract claim based on oral assurances from his supervisors that his employment with Garfield's would continue so long as he satisfactorily performed his job or his good job performance continued. Second, a tort claim, alleging violation of the public policy exception to the employment-at-will doctrine under *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla. 1989). Garfield's moved to dismiss Hayes' petition for failure to state a claim upon which relief could be granted. The trial court granted the motion, Hayes appealed and the Court of Appeals affirmed.[1] We previously granted certiorari to decide whether either theory advanced stated a claim sufficient to overcome or act as an exception to the employment-at-will doctrine.

## III. EXCEPTIONS TO THE EMPLOYMENT–AT–WILL DOCTRINE.

■ Where an employment contract is of indefinite duration, it is terminable at will by either party. *Singh v. Cities Service Oil Company*, 554 P.2d 1367, 1369 (Okla.1976). In *Burk v. K–Mart, supra*, this Court recognized that, under the classic statement of the at-will rule "an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong." 770 P.2d at 26. However, the employment-at-will doctrine has been judicially limited by exceptions that restrict the grounds on which an at-will employee may be discharged. Hayes

1. A separate appeal (Case No. 78,761) was filed by Garfield's who alleged error by the trial court in overruling its objection to Hayes' inclusion in the designation of record a criminal embezzlement file concerning the manager who terminated him and an Oklahoma Employment Security Commission file, apparently concerning Hayes' claim for unemployment benefits. By order of this Court the two appeals were consolidated. The issue in Garfield's appeal is whether Hayes should be allowed to expand the record for our review to include these materials. We determine it is unnecessary for us to determine any issue concerning the designation of record question. Whatever the content of these two files such would not impact our decision in reviewing the propriety of the trial court's granting of a motion to dismiss made pursuant to 12 O.S.1991, § 2012(B)(6). As we have noted in the text at **I.**

**STANDARD FOR REVIEWING MOTION TO DISMISS**, an appellate court must take as true all of the challenged pleadings allegations together with all reasonable inferences which may be drawn from them. These would include the fact that it was Hayes' immediate supervisor (i.e. the Stillwater Garfield's manager) that was embezzling funds from Garfield's and that it was this manager who fired Hayes for his investigation (or attempted investigation) and reporting of theft from Garfield's.

Moreover, we note that the adverse ruling on the objection—an issue *ancillary* to the first appeal by the discharged employee could and should have been presented by motion rather than by a separate petition in error. *See Armstrong v. Trustees of Hamilton Inv. Trust*, 667 P.2d 985, 987 (Okla.1983).

relies on two exceptions to the at-will doctrine: (1) breach of contract that he contends restricts the employer's power to discharge, and (2) public policy tort under *Burk v. K–Mart, supra.* We now turn to a discussion of both.

## III(A). THE BREACH OF CONTRACT EXCEPTION.

Hayes argues that an otherwise at-will employee who has been discharged may maintain an action for breach of contract where the at-will presumption is rebutted by a contractual promise of continued employment. In his petition, Hayes claims "[he] was led to believe that he would be employed as long as he did an adequate job and performed his duties," i.e. as long as he performed his job satisfactorily. In addition to these oral assurances, he points to his recent promotion to assistant manager, which his appellate submissions indicate was approximately two months prior to his discharge, to support his claim. Relying on these purported representations and the recent promotion he urges he had a contractual claim to job security which was breached by his discharge. He also urges that because Oklahoma recognizes no distinction between oral and written promises as providing a valid basis for a breach of contract action, except for cases falling within the statute of frauds, he has sufficiently stated a claim for breach of contract. In essence, what Hayes is alleging is that the alleged oral assurances he relies upon, i.e. he would be employed as long as he did an adequate job and/or performed his duties satisfactorily, constituted a binding agreement that protected him from discharge except for "just cause". We disagree.

The trial court dismissed Hayes' breach of contract claim, finding him to be an employee-at-will with no contractual entitlement to continued employment. In affirming the dismissal of Hayes' contract claim, the Court of Appeals noted that the oral assurances relied on by Hayes did not rise to the level of promises of indefinite job security sufficient to impose an implied contract on an employer and that Hayes failed to allege detrimental reliance on the assurances, something the Court of Appeals found necessary under *Hinson v. Cameron,* 742 P.2d 549 (Okla. 1987).[2] In our view Oklahoma case law clearly points to the conclusion Hayes' petition is legally insufficient to state a claim for breach of contract. This would be true even if the petition contained allegations of detrimental reliance.[3]

In *Hinson v. Cameron, supra,* we rejected a plaintiff's claim that her employer's personnel manual constituted an implied contract and that its provisions constituted a binding agreement introducing a just cause provision into the employment relationship. The plaintiff in *Hinson* alleged that her termination was without cause because it was not based on any of the grounds listed in her employer's personnel manual as possible grounds for disciplinary action or termination. While we recognized that the language of an employer's personnel manual may alter the employment-at-will relationship, we refused to imply from a list of grounds for termination or a reference to possible disciplinary action any contractual entitlement to continued employment where "the manual lists but examples of *some, although not all,* grounds for termination." (emphasis in original) *Hinson, supra,* 742 P.2d at 556. In our view, Hayes is in no different situation than the plaintiff in *Hinson.*

Our analysis is compelled both by previous cases of this Court and the United States Court of Appeals for the Tenth Circuit in the employment law arena. In *Blanton v. Housing Authority of the City of Norman,* 794

---

**2.** The detrimental reliance would presumably be foregoing other employment opportunities.

**3.** In that we believe even if the petition did contain allegations concerning detrimental reliance it would still not be sufficient to state a claim upon which relief could be granted under a contractual theory, we need not and, therefore, do not decide any issue raised in this appeal by the parties concerning amendment of the petition

to claim detrimental reliance or the applicability of 12 O.S.1991, § 2012(G). In our view, the petition and the allegations contained therein, read in conformity with the arguments raised by Hayes in this appeal, are simply insufficient to state any contractual claim under any cognizable or viable legal theory. Thus, the failure of his petition to state a contract claim in our view is incurable.

P.2d 412 (Okla.1990), a case concerning public employment, a public housing director alleged that statements made to him during his employment interview to the effect he could work as long as his work was satisfactory created a property interest in continued employment subject to due process protection. Citing *Asbill v. Housing Authority of Choctaw Nation of Oklahoma,* 726 F.2d 1499 (10th Cir.1984), this Court recognized that unless an employee-at-will can prove **substantive restrictions** on the employer's power to discharge, the employment must be considered to be terminable at will. In *Blanton* we concluded that "[a]bsent evidence of a substantive restriction on the Board's power to dismiss Blanton or any statute conferring upon him a property right in continued employment, we hold Blanton's employment contract was terminable at will." *Blanton, supra,* 794 P.2d at 415. Hayes' reliance on the oral assurances here are virtually indistinguishable from those in *Blanton.*

 Although normally the issue of whether an implied contract exists is factual, if the alleged promises are nothing more than vague assurances, as they are here, the issue can be decided as a matter of law. *Dupree v. United Parcel Service, Inc.,* 956 F.2d 219, 222 (10th Cir.1992). This is so for the reason that in order to create an implied contract the promises must be definite. *See generally Krause v. Dresser Industries, Inc.,* 910 F.2d 674, 678–679 (10th Cir.1990). Courts "must distinguish between carefully developed employer representations upon which an employee may justifiably rely, and general platitudes, vague assurances, praise, and indefinite promises of permanent continued employment." *Hinson, supra,* 742 P.2d at 560 (Kauger, J. concurring in part and dissenting in part); *See also Beck v. Phillips Colleges, Inc.,* 883 P.2d 1283, 1285 (Okla.Ct. App.Div.1, 1994) (vague assurances of job security insufficient to support implied contract); *Williams v. Maremont Corp.,* 875 F.2d 1476, 1481 (10th Cir.1989) (courts are in general agreement that the promises must be definite, not just vague assurances). Only when the promises are definite and, thus, of the sort which may be reasonably or justifiably relied on by the employee, will a contract claim be viable, not when the employee relies on only vague assurances that no reasonable person would justifiably rely upon. There is, thus, an objective component to the nature of such a contract claim in the form of definite and specific promises by the employer sufficient to substantively restrict the reasons for termination. Here, Hayes has simply failed to allege any such substantive restrictions or definite or specific promises on the part of Garfield's.

In *Gilmore v. Enogex, Inc.,* 878 P.2d 360 (Okla.1994), this Court recently examined the circumstances where an employee manual or handbook can form the basis of an implied contract between the employer and its employees. In *Gilmore,* an at-will employee, terminated for refusing to submit to a random drug test, alleged that he was discharged in violation of an implied contract created by the terms of his employer's personnel manual. The employee claimed that a provision in the manual providing that the company would respect the privacy of its employees prevented the employer from subjecting him to the mandatory drug testing program and that the manual provisions amended the at-will employment relationship to provide contractual protection from discharge. We concluded, however, that the provisions cited did not rise to the level of an implied contractual covenant that would afford the employee protection from discharge for failing to submit to the drug test. One of the reasons we so held was based on the view that the following limitation on the scope of implied contracts created by employee handbooks applied, to wit: "the promises in the employee manual which may operate to restrict the employer's power to discharge must be in definite terms-not in the form of vague assurances." *Id.* at 368. Although Hayes relies on oral assurances, rather than a written handbook or manual, his contractual claim must fail for essentially the same reason. The assurances alleged by Hayes clearly lack the specificity needed to transform an at-will employment relationship into one requiring dismissal only for cause. This is so for the reason the vague assurances he relies on place absolutely no **substantive restrictions on the reasons the employer may terminate the employee,** here Hayes.

In addition to *Hinson,* which as noted provides no support for his contractual claim of job security, Hayes relies on *Langdon v. Saga Corp.,* 569 P.2d 524 (Okla.Ct.App.Div.1, 1976), where the Court of Appeals held that an offer of benefits in an employer's personnel manual constituted an offer of a unilateral contract accepted by the employee's continuing to work for the employer. The benefits involved in *Langdon* were already accrued at the time of termination and consisted of unused paid vacation time and certain severance allowances. The *Langdon* court stated in such regard:

> Where an employee at will forgoes options to refuse future performance in reliance or in partial reliance on articulated personnel policies of the employer, the employer is bound by those policies insofar as they have accrued to an employee for performance rendered while they were in effect and have not been excluded or modified by another valid contractual arrangement.

*Id.* at 527.

In the instant case, Hayes urges that the alleged oral assurances of continued employment provide the basis for an implied contract just as promises of benefits provided the basis of an implied contract in *Langdon.* He is incorrect. Hayes has not alleged a deprivation of any **accrued** benefit. He only claims entitlement to continued, i.e. future or prospective employment with Garfield's. Thus, *Langdon, supra,* and its holding that an employee upon termination is entitled to recover benefits already accrued, **i.e. already earned,** is simply inapplicable to the present situation.

We finally note in regard to Hayes' contract theory that his apparent reliance on certain language in *Hinson* where we set out that some courts have relied on certain factors as critical to evaluate whether an implied contract right to job security exists [*Id.,* 742 P.2d at 554–555] must also fail. The factors set out in *Hinson* were: "(a) evidence of some "separate consideration" beyond the employee's services to support the implied term, (b) longevity of employment, (c) employer handbooks and policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices, and (e) promotions and commendations." *Id.* The only factors arguably applicable here are (d) and (e), the latter because Hayes alleged he was apparently recently promoted to his position of assistant manager. However, neither will assist Hayes.

▮ In the first place the detrimental reliance on oral assurances must be reasonable, i.e. justifiably based, as set forth above. In other words, the claim of entitlement to continued employment or job security must be reasonable under an objective standard, not merely the subjective belief of the employee. Secondly, that an employee has recently been promoted is insufficient alone to support a claim to continued employment. It must be coupled with definite statements by the employer sufficient to substantively restrict the reasons the employer might terminate an employee. Here, as noted, Hayes has alleged no such substantive restrictions because the oral assurances he relies on are simply too indefinite and vague to do so, just as in *Hinson,* where a policy manual containing **some, but not all,** the grounds for termination or discipline, was held insufficient to bind the employer to a contractually based just cause provision which would take the matter out of an employment-at-will relationship.

▮ In conclusion, Hayes' allegations of oral assurances his employment would continue as long as his performance remained adequate, or as long as he performed his duties well or satisfactorily, are insufficient to support a contractually based theory to continued employment or job security, whether or not Hayes detrimentally relied on the purported assurances, because such oral assurances place no substantive restrictions on the reasons the employer may terminate. Such allegations are merely vague assurances which could not be reasonably or justifiably relied on by the employee as creating some contractually based claim of continued job security or that discharge could only be for just cause. The fact that Hayes was recently promoted does not alter the situation. In that Hayes has failed to allege any definite term for which he was to be employed and the oral assurances he relies on

are insufficient to support an implied contract that he could only be terminated for just cause, we hold Hayes' petition legally insufficient to state a claim for breach of either an express or implied contract for continued employment sufficient to take the matter out of the employment-at-will situation and the trial court properly dismissed Hayes' contract claim.[4]

## III(B). THE PUBLIC POLICY TORT EXCEPTION.

In *Burk v. K–Mart, supra*, we adopted a public policy tort exception to the employment-at-will doctrine in "cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." 770 P.2d at 28. We noted that the exception was to be tightly circumscribed in light of the vague meaning of the term public policy. *Id.* at 28–29. A public policy tort claim, as fashioned by *Burk*, was said to arise "where an employee is discharged for [1] refusing to act in violation of an established and well-defined public policy or [2] for performing an act consistent with a clear and compelling public policy." 770 P.2d at 29. Hayes claims his discharge falls within both of these branches of the public policy tort exception to the employment-at-will doctrine. In that we have held that the initial determination of public policy is a question of law to be resolved by the court [*Pearson v. Hope Lumber & Supply Co., Inc.*, 820 P.2d 443, 444 (Okla.1991)] it falls initially to the trial court and ultimately to this Court to decide whether a sufficient discernable public policy is implicated by the discharge of an otherwise at-will employee to allow the employee to go

forward within the *Burk* tort framework or whether, instead, the case may be resolved as a matter of law against the discharged employee. As we will explain, we do not believe Hayes has stated or can state a claim under either the second branch, i.e. performing an act consistent with a clear and compelling public policy, or the first branch of the *Burk* tort, i.e. refusing to act in violation of an established and well-defined public policy. We deal first with Hayes' claim that his reporting or investigating of criminal activity by a co-employee against his employer is sufficient to invoke the public policy tort under the second branch of the *Burk* tort.

## III(B)(1). PERFORMING AN ACT CONSISTENT WITH A CLEAR AND COMPELLING PUBLIC POLICY.

In essence, Hayes contends his reporting and investigating of criminal activity by his supervisor against the employer, i.e. embezzlement from Garfield's, which Hayes correctly points out is a violation of our criminal law [21 O.S.1991, § 1456][5], should be protected because in doing so he is performing an act consistent with a clear and compelling public policy, to wit: acting as a good citizen and loyal employee in reporting said crime committed by his co-employee, and an employer should not be allowed with impunity to terminate an employee for such "whistle-blowing" activity. We believe Hayes is mistaken.

In the first instance, in that Hayes' petition does not indicate whether he reported the embezzlement to outside law enforcement officials or internally to company officials, we

---

**4.** Although there is some national jurisprudence which seems to support Hayes' claim that oral statements of the employer to the employee such as you will be employed, or you will not be terminated, as long as you perform your job satisfactorily or adequately, or as long as your job performance is good, are sufficient to allow the case to go to the jury on a contract claim [*See e.g. Walker v. Consumers Power Co.*, 824 F.2d 499 (6th Cir.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988)], we flatly reject the view that such words of mere puffery are sufficient to transform an employment-at-will

situation of indefinite duration into a binding contract that the employee may be discharged only for just cause.

**5.** 21 O.S.1991, § 1456 provides in relevant part: "If any clerk or servant of any private person or co-partnership or corporation ... fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of any other person which has come into his control or care by virtue of his employment as such clerk or servant, he is guilty of embezzlement."

deal with both situations.[6] In our view, neither external reporting, i.e. to outside law enforcement officials, or internal reporting, i.e. to company officials, of the crime of embezzlement from the employer, is imbued with the necessary clear and compelling public policy sufficient to protect the employee from discharge under the tort established in *Burk.*

Although we believe most people, including the members of this Court, would agree that, generally speaking, the reporting of crimes to appropriate law enforcement officials should be lauded and encouraged, and that an employee's reporting to appropriate company officials of crimes committed by co-employees against the interests of the employer is a likewise commendable endeavor, we must decide in this case whether the **reporting** of this **particular** crime against this **particular** victim, i.e. Garfield's, is so imbued with a clear and compelling public policy such that a tort claim is stated if the employer discharges the employee for so reporting. In our view, such reporting is not so protected.

Initially we note that an employee, in reporting a crime by a co-employee **against the interest of his employer** (such as the crime of embezzlement involved here) to outside law enforcement officials is not exercising any legal right or interest of his own. Thus, we start with the proposition the present situation **must** be distinguished from cases where the employee is terminated for seeking to vindicate his **own** legal rights or interests, such as where the employee is terminated for refusing to abandon (i.e. for continuing to pursue) a lawsuit against a third party to redress an on-the-job injury [*Groce v. Foster,* 880 P.2d 902 (Okla.1994)] or where an employee has in good faith filed a workers' compensation claim against his employer to recover for an on-the-job injury, a situation specifically protected by legislative enactment. 85 O.S.Supp.1992, § 5. In the present case Hayes' reporting of a crime against the interest of his employer cannot be said to have been seeking to vindicate his own legal rights, but only those of the employer he says wrongfully terminated him.

Further, an employee, in reporting such a crime committed by a co-employee **against the interest of his employer** to outside law enforcement officials is not seeking to vindicate a public wrong where the victim of the crime could in any real or direct sense be said to be the general public, as where crimes or violations of health or safety laws are involved. Thus, the situation here must also be distinguished from those where sister jurisdictions have protected "whistleblowing" activity geared toward the good faith reporting of infractions by the employer or co-employees of rules, regulations or the law pertaining to the **public** health, safety or general welfare. *Palmer v. Brown,* 242 Kan. 893, 752 P.2d 685, 689–690 (1988) (outside reporting of medicaid fraud of employer); *See also White v. General Motors Corporation,* 908 F.2d 669, 671–672 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991) (applying Kansas law) (internal reporting to GM management of various defects in brake installations); *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980) (internal reporting geared toward employee's efforts to ensure that his employer's products complied with applicable state law relating to labeling and licensing); *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978) (internal reporting geared toward employee's efforts to require his employer, a bank, to comply with consumer credit and protection laws). These latter situations must be distinguished from those which involve merely private or proprietary interests because to support a viable tort claim the public policy must truly be public, rather than merely private or proprietary. *Wagner*

6. As noted in **II. FACTS AND PROCEDURAL HISTORY**, in the text of this opinion, Hayes' petition is extremely general. Under his tort claim he merely alleges he was terminated for reporting and attempting to investigate theft of property and embezzlement from Garfield's. The petition does not allege who he reported the theft or embezzlement to, although his trial court brief in response to Garfield's motion to dismiss and his appellate submissions seem to hint that the only reporting he did was internally to the supervisor he thought was embezzling and who discharged him. In that Hayes' petition is, however, broad enough to encompass both internal and external reporting of such criminal activity, we deal with both situations.

*v. City of Globe,* 150 Ariz. 82, 722 P.2d 250, 256–257 (1986). We believe here the situation involves only the private or proprietary interests of the employer-employee relationship, not the direct interests of the general public as where the reporting involves the criminal wrongdoing of the employer or a co-employee perpetrated against the interests of the general public.[7]

Further, in regard to external reporting (assuming that is what Hayes did) it is not up to an individual employee to report to outside law enforcement agencies embezzlement **from his employer by a co-employee, but it is up to the employer, who is the direct victim of the crime.** Although the public in a very general way might be said to be the indirect victim of all crimes we are not aware of a general consensus sufficient to base a *Burk* tort claim upon that there is a public policy so thoroughly established in the public consciousness that would forbid an employer from making an informed business decision that its employees are prohibited from reporting crimes **against the interest of the employer** (here embezzlement from Garfield's) to law enforcement officials and if they do so termination is the result. After all it is the employer, Garfield's, whose money or property was stolen, not Hayes' money or the money of a relative or friend. Hayes makes no allegations otherwise.

This situation is also distinguishable from that dealt with in *Vannerson v. Board of Regents of University of Oklahoma,* 784 P.2d 1053 (Okla.1989), where we held a public employee working for the University of Oklahoma, a State institution, had a viable claim under *Burk* if he could show he was terminated for going over his supervisor's head in complaint of an illegal disposition of state property. *Vannerson,* 784 P.2d at 1055.[8] In *Vannerson* the activity subject to the discharged employee's reporting involved the illegal transfer, by sale or gift, of **public** property, a situation which we believe concerns a clear and compelling public policy, **protecting the public's interest in seeing to it that the peoples' tax dollars are not fraudulently stolen by State employees or officials, or other individuals, by either giving away or selling public property for their own private reasons or profit.**[9] In

---

7. This case must also be distinguished from situations where the employee is discharged for performing an important public obligation which is also statutorily protected from employer retaliatory discharge, such as where the employee is terminated for performing jury duty. *See Brown v. MFC Finance Co. of Oklahoma,* 838 P.2d 524 (Okla.Ct.App.Div.3, 1992) (employee's jury service statutorily protected against employer's retaliatory discharge by 38 O.S.1991, § 35). In such a situation the public policy is clear and compelling and the public nature of jury service is unmistakable. We also note that although we have contrasted the present situation from those cases from sister jurisdictions cited in the text concerning the internal or external good faith reporting of employer or co-employee infractions of rules, regulations or the law pertaining to the public health, safety or general welfare, we do not in this case decide in what circumstances discharge for such reporting would state a *Burk* claim. For us to do so here is not necessary to our decision in this case and, accordingly, would be mere dicta. Further, because of the innumerable and varied factual situations we can envision and the potentially large scope of laws arguably pertaining to public health, safety or the general welfare it would be improper for us to make broad statements here concerning those areas which might fall under a *Burk* claim. The fact is that the decision as to whether a certain situation does or does not fall under the *Burk*

umbrella must be made to a large degree on a case-by-case basis.

8. The facts in *Vannerson v. Board of Regents of the University of Oklahoma,* 784 P.2d 1053 (Okla. 1989), reveal that the discharged employee although not sending it, had prepared a letter to his state representative apparently concerning his having seen the purportedly illegal transfer of some unopened boxes of floor tiles from a University employee to a non-employee and that he showed this letter to his supervisor after he became dissatisfied with the University's response to his initial complaint of the illegal transfer incident. *Id.* at 1054. University officials had apparently taken the position the materials transferred were just "trash". *Id.* A police determination of the incident concluded the transferring employee had illegally received $30.00 for the boxes of floor tiles. *Id.*

9. Our decision in *Vannerson* appears consistent with the present legislative policy expressed in regard to the disciplining of State agency employees found at 74 O.S.Supp.1994, § 840–2.5(A)(1–4), as amended by 1995 Okla.Sess.Laws, Ch. 310, § 4. 1995 Okla.Sess.Law Serv., Ch. 310, § 4 (West). Section 840–2.5(A)(1–4), as so amended, provides:

A. For purposes of this section, "agency" means any office, department, commission or

essence, the situation in *Vannerson* was one where public property was being pilfered or stolen. Here we can see no such overriding public interest, but merely the private and/or proprietary interests of the employer in its relationship with the employee as to whether the employer wishes to pursue in the first instance a criminal complaint against the accused co-employee. Again, this is, in our view, primarily a private business decision.

 As to internal reporting to company officials (assuming that is what Hayes' claim is based upon) the same rationale applies, to wit: no clear and compelling public policy is involved, rather only a private internal business matter is implicated. Although we might think it would actually be contrary to good business decision-making for an employer to terminate an employee for uncovering co-employee embezzlement and reporting it to the company hierarchy, and we might even think it is morally wrong, the *Burk* tort does not protect an employee from his employer's poor business judgment, corporate foolishness or moral transgressions, but only protects the employee from termination by the employer when such discharge has violated a clear mandate of public policy. An employer's internal policies on how to deal with the actual affirmative reporting of crimes where the employer is the victim of the crime, as with the embezzlement involved here, simply does not implicate to a sufficient degree the second branch of the *Burk* formulation, i.e. performing an act consistent with a clear and compelling public policy. We now turn to the first branch of the *Burk* formulation-refusing to act in violation of an established and well-defined public policy.

## III(B)(2). REFUSING TO ACT IN VIOLATION OF AN ESTABLISHED AND WELL-DEFINED PUBLIC POLICY.

Hayes also asserts his refusal to forego reporting of the criminal activity of his manager at the Stillwater Garfield's falls under the *Burk* umbrella of refusing to act in violation of an established and well-defined public policy. Hayes put his argument as to this part of the *Burk* tort as follows in his trial court brief in response to Garfield's motion to dismiss:

> Under Oklahoma law, it is a serious criminal offense for an employee to embezzle funds from his employer. *See* 21 Okla. Stat. 1451 *et seq.* (1910). When, as is alleged by Plaintiff in this case, an employee becomes aware of such a crime, it is a critically important part of his duty of loyalty to his employer that it be investigated and reported to the responsible officers of the corporation. Petition P. 10.

> In substance, then, Plaintiff was discharged by his supervisor because he refused to ignore this duty of loyalty, continued to investigate, and must have appeared to threaten his supervisor with exposure. No more than this is required to satisfy the first method identified in the *Burk* formulation, by which an actionable test (sic) may be made out.

Original Record, p. 18.

 As with the second branch of the *Burk* tort, Hayes is mistaken as to his reliance in regard to the first branch. Aspects of loyalty to the employer involve merely

institution of the state government. No officer or employee of any state agency shall prohibit or take disciplinary action against employees of such agency, whether subject to the provisions of the Merit System or in unclassified service, for:
1. Disclosing public information;
2. Reporting any violation of state or federal law, rule or policy; mismanagement; a gross waste of public funds; an abuse of authority; or a substantial and specific danger to public health or safety;
3. Reporting such information without giving prior notice to the employee's supervisor or anyone else in the employee's chain of command;

4. Discussing the operations and functions of the agency, either specifically or generally, with the Governor, members of the Legislature or others.

*Vannerson* also involved the discharged employee's claim he was discharged for reporting inventory discrepancies and/or record keeping errors by the University of a non-criminal nature, a situation we found insufficient to support a *Burk* tort claim. We need not decide here whether such a situation would presently support a *Burk* claim in the State public employment arena given the present language of § 840-2.5(A)(1-4).

private and proprietary interests insufficient to support a *Burk* claim. They simply do not sufficiently impact any public policy subject to protection under the *Burk* tort that we can discern. Further, we must note that generally mere presence at the scene of a crime or acquiescence therein, without participation, does not constitute a crime. *Barnett v. State,* 853 P.2d 226, 231 (Okla.Crim.App. 1993); *Smith v. State,* 66 Okla.Crim. 408, 92 P.2d 582, *Third Syllabus,* (1939) (one is not a party to a crime because he merely acquiesces therein with knowledge that another is committing an offence). Accordingly, it cannot be said as a general proposition that an employee's mere failure to report a crime of which he has knowledge is guilty of any violation of the criminal law. Hayes never alleges that his discharge was for a refusal to commit a crime.

 This situation, accordingly, must be distinguished from those where a *Burk* tort has been sanctioned because the discharge was claimed to have been motivated by the employee's refusal to commit a crime. *See McGehee v. Florafax International, Inc.,* 776 P.2d 852 (Okla.1989) (discharge of employee who refused to execute false affidavits, i.e. refusal to commit perjury); *Sargent v. Central National Bank & Trust Co. of Enid, Oklahoma,* 809 P.2d 1298 (Okla.1991) (discharge for refusal to destroy or alter a report to a bank's audit committee, acts prohibited by criminal statutes); and *White v. American Airlines, Inc.,* 915 F.2d 1414 (10th Cir. 1990) (discharge for refusal to commit perjury).[10] These situations obviously fall under the *Burk* umbrella because an employer cannot condition employment upon an employee's agreement to violate our criminal laws without being subject to a tortious claim of wrongful discharge in violation of public policy. Hayes' position, however, that a *Burk* tort claim is also viable where the termination is alleged to have been motivated by

the employee's refusal to ignore a duty of loyalty to the employer clearly cannot be said to be analogous to the above situations, and as we have already stated, the arguments raised by Hayes involve merely the private and proprietary interests of the employer/employee relationship. Therefore, Hayes has stated no claim under the first branch of the *Burk* tort, i.e. refusing to act in violation of an established and well-defined public policy.

## IV. CONCLUSION.

Hayes' allegations of oral assurances his employment would continue as long as his performance remained adequate, as long as he performed his duties or performed good or satisfactorily, are insufficient to support a contractually based theory to continued employment or job security because such oral assurances place no substantive restrictions on the reasons the employer may terminate. Such allegations are merely vague assurances which could not be reasonably or justifiably relied on by an employee as creating some contractually based claim of continued job security or that discharge could only be for just cause. In that Hayes failed to allege any definite term for which he was to be employed and the oral assurances he relies on are insufficient to support an implied contract that he could only be terminated for just cause, Hayes' petition was legally insufficient to state a claim for breach of either an express or implied contract for continued employment sufficient to take the matter out of the employment-at-will situation and the trial court properly dismissed Hayes' contract claim.

 No public policy *Burk* tort claim is stated under the second branch of the *Burk* formulation, i.e. performing an act consistent with a clear and compelling public policy, where an employee claims his dis-

---

10. Hayes' reliance on this duty of loyalty to his employer is also distinguishable from the situation involved in *Todd v. Frank's Tong Service, Inc.,* 784 P.2d 47 (Okla.1989), where we sanctioned a *Burk* tort claim where the termination was alleged to have been based upon the employee's refusal to drive a vehicle not conforming to statutory mandates regarding safety in that the vehicle had defective brakes, headlights, and turn signals. In sanctioning the *Burk* tort claim in *Todd,* as stated in our opinion, we recognized the potential impact on the general public of allowing employers to terminate employees who refused to drive unsafe vehicles on our highways. *Id.* at 50. To us, it is clear that a duty of loyalty to the employer cannot be said to rise to the same level as the public's safety on our highways.

charge was motivated by his reporting either externally (to appropriate law enforcement officials) or internally (to appropriate company officials), criminal conduct of a co-employee perpetrated against the interest of the employer, i.e. where the employer is the victim of the criminal conduct of the co-employee. Nor is a public policy *Burk* claim stated under the first branch of the *Burk* formulation, i.e. refusing to act in violation of an established and well-defined public policy, where the employee claims his termination was motivated by his refusal to ignore a duty of loyalty to his employer to investigate and/or report such criminal activity perpetrated by a co-employee against the interest of the employer. Hayes' petition was, thus, legally insufficient to state any viable tort claim which would take the matter out of the employment-at-will situation and the trial court properly dismissed Hayes' asserted tort claim.

In that it was beyond any doubt Hayes could prove no set of facts under either a contract or tort claim which would have entitled him to relief against Garfield's the trial court correctly dismissed pursuant to 12 O.S. 1991, § 2012(B)(6).

Accordingly, we **VACATE** the Court of Appeals opinion and **AFFIRM** the trial court judgment dismissing Hayes' petition for failure to state a claim upon which relief could be granted.

HODGES, SIMMS, HARGRAVE and OPALA, JJ., concur.

SUMMERS, J., concurs in part; dissents in part.

ALMA WILSON, C.J., and KAUGER, V.C.J., dissent.

WATT, J., disqualified.